BRUCE ISAACS (Bar No. 100296)
Email:  bruceisaacs@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA  90017
Telephone:  (213) 633-6808
Facsimile:  (213) 633-6899

JAMES W. QUINN (*pro hac vice*)
Email: james.quinn@weil.com
YEHUDAH L. BUCHWEITZ (*pro hac vice*)
Email: yehudah.buchweitz@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Defendant
CBS INTERACTIVE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAHCHAAROAH LIGHTBOURNE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRINTROOM, INC., PROFESSIONAL PHOTO STOREFRONTS, INC., BRAND AFFINITY TECHNOLOGIES, INC. and CBS INTERACTIVE, INC.,<br><br>Defendants. | NO. SACV13-00876 JLS (RNBX)<br><br>**CBS INTERACTIVE INC.'S MEMORANDUM OF LAW AND DECLARATIONS OF YEHUDAH L. BUCHWEITZ, VINH TO, AND JON SCHOENHERR IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS ACTION CERTIFICATION**<br><br>Date: June 19, 2015<br>Time:  2:30 p.m.<br>Ctrm:  10A<br>Judge: Hon. Josephine L. Staton |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

I.      Printroom Photo Stores ................................................................................. 2

II.     Yahchaaroah Lightbourne .............................................................................. 3

III.    The Putative Class .......................................................................................... 6

IV.     CBSI's Expert On Differences Among Class Members And Photos ......... 7

ARGUMENT .............................................................................................................. 8

I.      Plaintiff Must Show That The Rule 23 Requirements Are In Fact
        Met ................................................................................................................... 8

II.     Application of Multiple States' Laws Defeats Class Certification ............. 8

        A.      Material Differences In States' Laws Create A True Conflict ......... 9
        B.      A Nationwide Class Impairs Foreign States' Interests ................... 11

III.    Individualized Questions Of Fact And Law Predominate ........................ 12

        A.      Multiple Affirmative Defenses Will Need To Be Litigated ........... 12
                1.      Express and Implied Consent ................................................ 18
                2.      First Amendment and Statutory Defenses ........................... 18
                3.      Copyright Preemption ............................................................ 18
                4.      Communications Decency Act .............................................. 18
        B.      Injury And Damages Will Need To Be Litigated Individually ...... 18

IV.     Plaintiff Is Not Typical, And He Is Not An Adequate Representative ..... 20

V.      The Proposed Class Is Not Ascertainable ................................................. 21

VI.     This Class Action Is Not A Superior Method Of Adjudication ................ 24

VII.    Plaintiff's Proposed Notice Plan Is Inadequate ........................................ 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberghetti v. Corbis Corp.*,
263 F.R.D. 571 (C.D. Cal. 2010) ............................................................ *passim*

*Alberghetti v. Corbis Corp.*,
476 F.App'x 154 (9th Cir. 2012) ................................................................... 10

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp., L.P.*,
247 F.R.D. 156 (C.D. Cal. 2007) .................................................................. 19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................ 20, 21, 24

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) ................................................ 24

*Ballard v. Bank of Am., N.A.*,
2013 WL 4807193 (C.D. Cal. Sept. 6, 2013) ................................................. 23

*Bieneman v. City of Chicago*,
864 F.2d 463 (7th Cir. 1988) ........................................................................ 21

*Blanco v. CEC Entm't Concepts*,
2008 WL 239658 (C.D. Cal. Jan. 10, 2008) .................................................. 24

*Block v. Major League Baseball*,
65 Cal.App.4th 538 (Cal. Ct. App. 1998) ......................................... 12, 19, 20

*Bloom v. NCAA*,
93 P.3d 621 (Colo. Ct. App. 2004) ............................................................... 15

*In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*,
615 F.Supp.2d 1018 (N.D. Cal. 2009) ........................................................... 11

*Brown v. NFL Players Ass'n*,
281 F.R.D. 437 (C.D. Cal. 2012) .................................................................. 12

*Bruton v. Gerber Prods. Co.*,
2014 WL 2860995 (N.D. Cal. Jun. 23, 2014) ............................................... 22

*Byrd v. Aarons, Inc.*,
14 F.Supp.3d 667 (W.D. Pa. 2014) ............................................................... 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Cairns v. Franklin Mint Co.*,
   24 F.Supp.2d 1013 (C.D. Cal. 1998)............................................................. 11

*Churchill In Crestwood, LLC v. Schwartz*,
   2011 WL 7109212 (W.D. Mo. Jan. 27, 2011) ............................................... 14

*Comcast Corp. v. Behrend*,
   133 S.Ct. 1426 (2013) ...................................................................... 8, 15, 19, 20

*Connelly v. Hilton Grand Vacations Co., LLC*,
   294 F.R.D. 574 (S.D. Cal. 2013)................................................................... 13

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001)......................................................................... 11

*Dryer v. NFL*,
   55 F.Supp.3d 1181 (D. Minn. 2014) ...................................... 11, 14, 16, 24

*Evans v. Hewlett-Packard Co.*,
   2013 WL 5594717 (N.D. Cal. 2013)............................................................. 17

*Foster v. Svenson*,
   7 N.Y.S.3d 96 (1st Dept. 2015)..................................................................... 16

*Fraley v. Facebook*,
   830 F.Supp.2d 785 (N.D. Cal. 2011)............................................................ 18

*Gannon v. Network Tel. Servs., Inc.*,
   2013 WL 2450199 (C.D. Cal. June 5, 2013).................................................. 23

*Gautier v. Pro-Football, Inc.*,
   304 N.Y. 354 (1952)...................................................................................... 14

*Gavra v. Google, Inc.*,
   2013 WL 3788241 (N.D. Cal. 2013)............................................................. 17

*Gionfriddo v. Major League Baseball*,
   94 Cal.App.4th 400 (Cal. Ct. App. 2001)...................................................... 24

*Gustafson v. BAC Home Loans Servicing L.P.*,
   294 F.R.D. 529 (C.D. Cal. 2013) ............................................................... 9, 10

*Guzman v. Bridgepoint Educ., Inc.*,
   2015 WL 1396650 (S.D. Cal. Mar. 26, 2015)............................................... 11

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D. Cal. 1996) .................................................................. 24

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................... 20

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ...................................................................... 16

*Jones v. ConAgra Foods, Inc.*
   2014 WL 2702726 (N.D. Cal. Jun. 13, 2014) .................................................. 8

*Jones v. Corbis Corp.*,
   815 F.Supp.2d 1108 (C.D. Cal. 2011) ................................................. 10, 12, 13

*Jones v. Corbis Corp.*,
   489 F.App'x 155 (9th Cir. 2012) ................................................................. 14

*Lawrence v. CDB Servs., Inc.*,
   44 S.W.3d 544 (Tex. 2001) ........................................................................ 13

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ...................................................................... 21

*Madama v. Genesis Rehab Servs.*
   2014 WL 3695976 (D.N.J. July 24, 2014) ..................................................... 14

*Maloney v. T3Media, Inc.*,
   2015 WL 1346991 (C.D. Cal. Mar. 6, 2015) ............................................ 15, 17

*Mark v. Gawker Media LLC*,
   2015 WL 2330079 (S.D.N.Y. Mar. 5, 2015) .................................................. 25

*Marshall v. NFL*,
   2015 WL 2402355 (8th Cir. May 21, 2015) ............................................... 8, 20

*Martin v. Pacific Parking Sys., Inc.*,
   583 F.App'x 803 (9th Cir. 2014) ................................................................. 25

*Mayfield v. Dalton*,
   109 F.3d 1423 (9th Cir. 1997) .................................................................... 21

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................. 9, 10, 11

*Mazur v. eBay, Inc.*
   257 F.R.D. 563 (N.D. Cal. 2009) ................................................................. 18

*Miller v. Collectors Universe, Inc.*,
   159 Cal.App.4th 988 (2008) ....................................................................... 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Motschenbacher v. R. J. Reynolds Co.*,
   498 F.2d 821 (9th Cir. 1974) ........................................................................ 11

*In re NCAA I-A Walk-On Football Players Litig.*,
   2006 WL 1207915 (W.D. Wash. May 3, 2006) ............................................. 20

*In re NCAA Student-Athlete Concussion Injury Litig.*,
   2014 WL 7237208 (N.D. Ill. Dec. 17, 2014) ........................................... 23, 24

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ............................................ 20, 23

*NCAA v. Lasege*,
   53 S.W.3d 77 (Ky. 2003) .............................................................................. 15

*Newton v. Thomason*,
   22 F.3d 1455 (9th Cir. 1994) ........................................................................ 13

*Page v. Something Weird Video*,
   908 F.Supp. 714 (C.D. Cal. 1995) ............................................................ 11, 13

*In re Paxil Litig.*,
   212 F.R.D. 539 (C.D. Cal. 2003) ................................................................ 9, 21

*Perkins v. LinkedIn*,
   53 F.Supp.3d 1222 (N.D. Cal. 2014) ............................................................. 18

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................................9

*Pryor v. Aerotek Scientific, LLC*,
   278 F.R.D. 516 (C.D. Cal. 2011) .............................................................. 21, 24

*Ray v. ESPN, Inc.*,
   2015 WL 1810486 (8th Cir. Apr. 22, 2015) ................................................... 17

*Rivell v. Private Health Care Sys., Inc.*,
   2009 WL 10318921 (S.D. Ga. Aug. 24, 2009) ......................................... 10, 11

*Rivell v. Private Health Care Sys., Inc.*,
   887 F.Supp.2d 1277 (S.D. Ga. 2012) ............................................................ 14

*Rosa and Raymond Parks Inst. For Self-Dev. v. Target Corp.*,
   2015 WL 519057 (M.D. Ala. Feb. 9, 2015) ................................................... 16

*Rutherford v. FIA Card Servs., N.A.*,
   2012 WL 5830081 (C.D. Cal. Nov. 16, 2012) ............................................... 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) .................................................................... 13

*Stiller v. Costco Wholesale Corp.*,
298 F.R.D. 611 (S.D. Cal. 2014) .................................................................. 20

*Stilson v. Reader's Digest Ass'n.*,
28 Cal.App.3d. 270 (Cal. Ct. App. 1972) ...................................................... 19

*Valentino v. Carter Wallace*,
97 F.3d 1227 (9th Cir. 1996) ........................................................................ 21

*Vandervort v. Balboa Capital Corp.*,
287 F.R.D. 554 (C.D. Cal. 2012) ................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ..................................................................................... 8

*Walter v. Hughes Commc'ns*,
2011 WL 2650711 (N.D. Cal. Jul. 6, 2011) ................................................. 25

*Woods v. Prestwick House, Inc.*,
247 P.3d 1183 (Okla. 2011) .......................................................................... 10

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ...................................................................... 10

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001)
*opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) ............... 8

**Statutes**

Cal. Civ. Code § 3344 ........................................................................ 16, 18, 22

Cal. Civ. Code § 1646 .................................................................................... 13

Communications Decency Act of 1996, 47 U.S.C. § 230 *et seq.* ......................... 17

**Rules**

Fed. R. Civ. P. 23 ................................................................................. *passim*

**Other Authorities**

U.S. Const. amend. I .......................................................................... 1, 16, 17

A. Comm. on Judiciary, Analysis of A.B. 826 ................................................ 16

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Robert A. Miller, *Commercial Appropriation of an Individual's Name, Photograph or Likeness: A New Remedy for Californians*, 3 PAC. L.J. 651 (1972)................................................................................. 16

J. Thomas McCarthy, *The Rights of Publicity and Privacy* 2d § 6:6 (2014) ..........9

**INTRODUCTION**

In his Motion, Plaintiff tries to fit over 600,000 multi-shaped pegs into one narrow hole.  They do not fit because Plaintiff has failed to satisfy his burden of showing that certification of any class (let alone a national class applying only California law) is appropriate in this case.  The many individual fact issues, as well as outcome-determinative differences in 50 states' laws – which Plaintiff ignores despite concerns raised by the Court – render this case ill-suited for class treatment.  A host of separate issues will need to be decided for more than *half a million* images, including: (i) each class member's domicile; (ii) the strength of the interests of the states implicated by each use;  (iii) whether each class member expressly or impliedly consented to each use; (iv) whether each image is protected by the First Amendment, statutory exemptions, and/or other affirmative defenses; and (v) whether each class member benefited from each challenged use (requiring consideration of additional factors for each image, as shown by CBSI's economic expert).

The record has borne out the Court's concerns that the proposed class would be plagued by individual issues concerning choice of law, consent, and numerous other individual inquiries.  The evidence related to just the Plaintiff demonstrates how these issues will unfold not only as a theoretical matter but as a practical matter, requiring tens of thousands of mini-trials on multiple issues for each challenged use.  On the basis of one individual who appeared in nine photos, using different names and jersey numbers, displayed by his University's official photo store, only one of which was ever sold (to his girlfriend), who testified that his claimed injury amounted to at most, $6 dollars, Plaintiff is attempting to certify a nationwide class seeking massive damages.  Plaintiff has not even attempted to come forth with a trial plan explaining how this Court could deal with any of these issues through class-wide proof.  For these and other reasons, which are discussed in detail below, the Court should deny the Motion.

## STATEMENT OF FACTS[1]

### I.      Printroom Photo Stores

On July 1, 2012, CBSI entered into an Online Photo Store E-Commerce Agreement ("Printroom Agreement") with Printroom, Inc. (now Professional Photo Storefronts, Inc. ("PPSI")), for Printroom to host, design, and develop online photo stores for certain of CBSI's client schools ("University Photo Stores").[2]  Several University Photo Stores were launched beginning August 2012. Schoenherr Dec. ¶ 10.  Printroom later assigned the Printroom Agreement to Brand Affinity Technologies, Inc. (with Printroom, Inc. and PPSI, "Printroom").  The Printroom Agreement expired by its terms on June 30, 2014.[3]

Under the Printroom Agreement, images and related information (*i.e.*, sport, date, event) were uploaded to a system called Netitor.  *See* Schoenherr Dec. ¶ 3.  Most of these images were uploaded by photographers affiliated with the universities or individuals in university athletic departments.[4]  Unique web pages for each image were automatically created and Printroom in turn created URLs linking its University Photo Stores back to these images.  *See* Schoenherr Dec. ¶ 3.  University Photo Stores then displayed the images for potential sale online.  *See id.*  A user could select what type of photo to buy, including size and whether to place it on a product.  Only three purchasers ever placed any photos on a mug, mousepad, magnet, calendar or greeting card.  The one sale of an image "affixed" to a magnet, mug and mouse pad was to a Printroom competitor.  *See* To Dec. ¶ 8.  These three options were disabled by Printroom shortly thereafter.  *See* Ex. 5 (May 27, 2015 Dec. of M. Tran ¶ 3).   Only three sets of greeting cards were sold

---

[1] Exhibits to the Declaration of Yehudah L. Buchweitz are cited as "Ex. _." Excerpts from the depositions of Yahchaaroah Lightbourne and Robert Stull are Exhibits 2 and 3 and are cited as "Pl. Dep." and "Stull Dep."  The Expert Report of Catherine Tucker is Ex. 43 and is cited as "Tucker Rep." The Declarations of Vinh To and Jon Schoenherr are cited as "To Dec." and "Schoenherr Dec."
[2] *See* Aragon Dec. Ex. 7 at 1 §1.2 (Dkt. 161).
[3] *Id.* § 9.1.
[4] *See, e.g.*, *id.* ¶ 4; Ex. 4 (school loaded photos to Netitor) (CBSI021158).

to two buyers, each of whom shares a last name with the depicted athlete. To Dec. ¶ 8; Tucker Rep. Exs. 10, 11 & ¶ 79. Twenty-four diploma frames were sold, but ten did not depict athletes, and at least ten were sold to relatives of the depicted athlete. To Dec. ¶ 9; Tucker Rep. Exs. 10, 12 & ¶ 79. Forty-four coin frames were sold; nine do not depict any athlete, and at least 17 were sold to relatives of the depicted student-athlete, plus one to that depicted athlete. To Dec. ¶ 9; Tucker Rep. Exs. 10, 13 & ¶ 79. All of the other more than 10,000 purchases were of photos of various sizes or in plain frames. To Dec. ¶ 8; Tucker Rep. Ex. 10 & ¶ 76-77. The University Photo Stores were linked to official university athletic websites, including through news stories.[5]

At least 111,000 images in Netitor were from 19 University Photo Stores that never launched; *i.e.*, they were never linked to an official university website and the images were never available for sale. *See* To Dec. ¶ 5-6. Numerous images do not depict athletes at all. *See* Schoenherr Dec. ¶ 6. Many images had captions with information about the event depicted.[6] Contrary to Plaintiff's claims (Mot. at 4), *no* University Photo Store included advertising and CBSI did not receive payment per unique visitor. *See* To Dec. ¶¶ 12-14; Tran Dec. ¶¶ 4-5.[7]

## II.   Yahchaaroah Lightbourne[8]

Plaintiff played college football at UTEP from 2009-2011, receiving scholarships to cover his tuition and expenses.[9] In 2013, he lived in Wyoming. He currently lives in Texas and has never lived in or played any college game in

---

[5] *See* Schoenherr Dec. ¶5; FAC ¶ 50; Ex. 6 (CBSI017249).
[6] *See* Pl. Dep. at 144:10-145:14.
[7] Also contrary to Plaintiff's claims (Mot. at 7-8), CBSI stated that it entered into the Printroom Agreement not only to increase revenue, but also to increase "quality of service, product offerings and integration with social media and user generated content." Aragon Dec. Ex. 4; *see also* Tucker Rep. at ¶¶ 21-24 (photos marketed as a "unique college keepsake" and for a "family archive").
[8] Plaintiff did not add or substitute a class representative before the Feb. 10, 2015 deadline. *See* Dkt. 132; *see also* Ex. 7 (Dec. 5 Tr.) at 9:5-21(COURT: "And let me ask about your Plaintiff, your named plaintiff – consent issues as to him. I thought you were going to have, perhaps, another named Plaintiff by now").
[9] *See* Pl. Dep. at 21:7-14; 22:18-24; 34:14-19; 75:1-76:12.

California.[10]   Photographers are present at UTEP games, practices, and athletic events, and are either media or UTEP staff.[11]   UTEP hires photographers so it can get action photos to "chronicle games and people," which are then added to the UTEP Athletics website.[12]   Plaintiff admitted that photographers or their employers owned the copyright in the photos at issue.[13]

There were only nine images of Plaintiff in UTEP's Photo Store (the "Lightbourne Photos").   *See* Exs. 10-18.   The Lightbourne Photos were each taken by UTEP staff photographers, and posted in an album titled with the depicted game or practice with descriptions including Plaintiff's name and then-jersey numbers.[14]   *Id.*   Two of the Lightbourne Photos also describe the names and jersey numbers of other student-athletes.   *Id.* at Exs. 14, 15.   Eight of the Lightbourne Photos depict Plaintiff and other college football players in a game, some who are identifiable by name or number, and others who are not; the ninth depicts Plaintiff and two UTEP athletics department staff.   *Id.* at Exs. 10-1.

Only one of the Lightbourne Photos was ever purchased, a 5x7 photo, by Lightbourne's then-girlfriend, Jessica Wilson.[15]   No image of Lightbourne was ever sold on a mug, mousepad, or other product.   *See* To Dec. ¶ 8.

In 2009, 2010, and 2011, Lightbourne signed Student-Athlete Image Authorization forms with UTEP (the "Lightbourne Consents") stating that he did:

> [H]ereby authorize the University of Texas at El Paso (UTEP) or its agents to make[] copies of, use, sell and distribute directly or through a third party, any photographic or other images taken in connection with my participation on a UTEP intercollegiate athletic team.[16]

---

[10] *See id.* at 65:22-66:18, 68:3-70:23,76:19-77:17; Dkt. 118-2 at § 1(b); Exs. 8-9.
[11] *See* Stull Dep. at 74:12-22, 75:5-9.
[12] *See id.* at 74:23-75:2, 98:15-99:11.
[13] *See* Pl. Dep. at 87:14-24.
[14] Plaintiff used "Lightbourne" and "Stuart" as last names, and played under two jersey numbers (which is common for student-athletes).   *See* Pl. Dep. at 53:2-23.
[15] *See* Pl. Dep. at 48:12-16, 49:15-25; 50:12-51:14, 52:10-53:1; Ex. 10 (CBSI-Lightbourne0160238).
[16] Exs. 19-21; Pl. Dep. at 21:14-17, 22:1:24, 34:14-35:8.

Lightbourne agreed the Lightbourne Consents had no limitations on UTEP's use of his photo or likeness.[17] Thus, Lightbourne testified that the allegations that he "never granted Defendants the rights to exploit his name, image or likeness commercially" or "to UTEP or to any company that manages the online display and/or sale of photos of UTEP sporting events," (FAC ¶¶ 64-65) – *were false*.[18]

Lightbourne admitted that no one at UTEP ever told him he could not play if he did not sign the Lightbourne Consents, and that he did not ask if signing was mandatory.[19] UTEP's athletic director Bob Stull confirmed that signing was not mandatory and that Lightbourne would have been allowed to play if he had not signed.[20] Stull testified that UTEP, through its agents including CBSI, was able to sell Lightbourne's photos without jeopardizing Lightbourne's eligibility.[21] UTEP's compliance director would explain the consent form to student-athletes, including that the form allows UTEP to use their photos, then ask the student-athletes to read the form carefully, and to ask any questions.[22] When Lightbourne signed the Lightbourne Consents, he was of majority age, had earned an associate's degree, and was on his way to a bachelor's degree at UTEP (with honors) and a career in radio, television, and professional football.[23] He received a UTEP education with scholarships, which led to post-graduate employment.[24]

Lightbourne willingly participated in UTEP games and practices at which he knew photographers, including those working for UTEP, were taking photos of him.[25] Lightbourne was aware of, and did not object to, photographers being present at games or practices.[26] Lightbourne was also aware certain UTEP games

[17] *See* Pl. Dep. at 194:23-195:5.
[18] *See id*. at 126:18-127:5.
[19] *See id*. at 18:21-19:10.
[20] *See* Stull Dep. at 44:14-16.
[21] *See id*. at 64:22-65:11.
[22] *See id*. at 35:25-36:19, 88:8-13.
[23] *See* Pl. Dep. at 21:14-22, 22:18-20, 34:14-22, 88:15-21, 117:20-119:7, 24-25.
[24] *See id*. at 122:8-18.
[25] *See id*. at 23:5-13.
[26] *See id*. at 128:8-13, 128:25-129:5.

were broadcast on TV or radio, and was pleased his family saw him play on ESPN.[27] He never asked anyone at UTEP to stop using his photos.[28]

Lightbourne further testified that he did not object to UTEP selling his photos on its website.[29] He agreed that UTEP could sell his photos either by itself or through an agent.[30] This is precisely what occurred. UTEP contracted with IMG to manage its multimedia rights and, in turn, IMG contracted with CBSI to operate UTEP's athletic website, including a photo store.[31]

Nor did Lightbourne object to Ms. Wilson's purchase of a picture of his first tackle, a moment that made him proud; he was "sure she wanted to keep the picture" for personal use.[32] Lightbourne further testified that he suffered no mental harm, and only claimed commercial harm from the single sale to his former girlfriend in an amount of $6, half of the $11.99 from the photo sold.[33]

## III. The Putative Class

Members of the putative class come from every state.[34] Plaintiff admitted that the putative class includes more famous student-athletes, whose images might differ in value compared to an average player.[35] Lightbourne also testified that whether a photo of a student-athlete depicts a famous person or moment is in "the eyes of the beholder."[36] Plaintiff further acknowledged that other student-athletes would receive a benefit from professional photographers taking photos of university events so that family members could buy the photos, and that photos sold for that reason were for personal, not commercial, use.[37] For example, Johns

---

[27] *See id*. at 26:19-28:6.
[28] *See id.* at 195:6-13.
[29] *See id*. at 30:9-31:2.
[30] *See id*. at 32:18-23, 33:25-34:13.
[31] *See* Stull Dep. at 83:12 – 86:19.
[32] *See* Pl. Dep. at 51:3-53:1; Ex. 10 (CBSI-Lightbourne0160238).
[33] *See* Pl. Dep. at 158:16-23, 159:6-160:2.
[34] *See* Schoenherr Dec. ¶ 9; Pl. Dep. at 179:6-13.
[35] *See id*. at 58:20-25, 59:8-19.
[36] *Id.* at 57:19-58:19.
[37] *See* Pl. Dep. at 44:2-12, 46:20-47:6.

Hopkins University requested *more* access to photos, because coaches and parents had "a lot of interest" in buying them.[38]  The top purchaser from UTEP's Photo Store was a depicted athlete's father.[39]  Stull testified that this benefited student-athletes because families were able to buy professional-grade photos, and student-athletes and their relatives were excited to be able to buy these photos.[40]  Lightbourne agreed that if a student-athlete bought her own photo, that could evidence consent to the sale.[41]  Many student-athletes bought their own photos.[42]

## IV.    CBSI's Expert On Differences Among Class Members And Photos

Professor Catherine Tucker, a qualified Ph.D. economist well-versed in marketing, online privacy, and information sharing, has analyzed data pertaining to Lightbourne and the putative class and has concluded there is no common proof of injury or damages from the publication and sale of the photos at issue.

Specifically, Prof. Tucker concludes that many student-athletes directly benefited from the challenged conduct, as they, friends and family were able to buy their photos as mementos of their college athletic career.  Tucker Rep. ¶¶ 10-11.  An understanding of all the ways in which each athlete may have benefited from his or her photo being on a University Photo Store would necessarily involve collecting and evaluating highly individualized information, with no systematic way to resolve these questions for each class member and each photo.  *Id.* ¶ 12.  Prof. Tucker further opined that there is no reliable framework for assessing potential economic net benefits or damages through common proof.  *Id.* ¶ 14.  In addition, Prof. Tucker concluded that even upon careful photo-by-photo examination, the proposed class presents insurmountable barriers to ascertainability, manageability, and notification.  *Id.* ¶ 13.  Finally, Prof. Tucker

---

[38] *See, e.g.*, Exs. 22-23 (CBSI047314; CBSI013548).

[39] *See* To Dec. ¶ 10 (father bought 17 photos of child); Stull Dep. at 91:15-92:15.

[40] *See id.* at 91:3-93:16; 93:20-96:1.

[41] *See id.* at 135:11-19, 136:4-21.

[42]  *See, e.g.*, Exs. 24-28 (CBSI-Lightbourne0000900; 0058197; 0145201; 0068094; 0062018).

analyzed Dr. Bardwell's report, and concluded that it does not address or impact any of her opinions. *Id*. ¶ 15. Notably, the limited sample upon which Dr. Bardwell's report is based highlights the positive benefits and differences in those benefits for the various class members. *Id*.

## ARGUMENT

## I.   Plaintiff Must Show That The Rule 23 Requirements Are In Fact Met

At this stage, the Court can "probe behind the pleadings" to conduct the required "rigorous analysis" to see if Plaintiff has satisfied Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. v. Falcon*, 457 U.S. 147, 160 (1982)). Plaintiff must "affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact*…common questions of law or fact…." *Id*. Plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)," *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013), which requires Plaintiff to prove by a "preponderance of the evidence" that Rule 23's requirements are met. *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *3 (N.D. Cal. Jun. 13, 2014) (citing *Dukes*, 131 S.Ct. at 2551).

Tellingly, Plaintiff relies on outdated case law (Mot. at 9, n. 57), largely ignores *Dukes*, and omits *Comcast*. As one court recently held, where "class members' claims involve complex legal questions, conflicts of law analyses, the application of numerous states' laws, and individualized damages for each class member that are speculative and difficult to estimate, the enormity of the burden is obvious." *Marshall v. NFL*, 2015 WL 2402355, at *7 (8th Cir. May 21, 2015). As shown below, Plaintiff has not and cannot meet his burden under Rule 23.

## II.   Application of Multiple States' Laws Defeats Class Certification

In a class action governed by multiple states' laws, variances overwhelm common issues and render a class unmanageable.[43] Here, ***despite the Court***

---

[43] *See, e.g.*, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (finding "no manageable trial plan adequate to deal with individualized

*having raised its concerns about this very issue*,[44] Plaintiff inexplicably failed to put forth *any* choice of law analysis. *See* Mot. at 17-18.[45]

To start, the court "must look to the forum state's choice of law rules to determine the controlling substantive law." *Gustafson v. BAC Home Loans Servicing L.P.*, 294 F.R.D. 529, 535 (C.D. Cal. 2013). Here, applying California law to class members with no contacts with California exceeds constitutional limits.[46] Further, California law may only apply if "the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). Thus, courts apply a three-part governmental interest test: (1) to determine whether the relevant law of each "potentially affected jurisdiction" is different; (2) if so, examine "each jurisdiction's interest in the application of its own law" to "determine whether a true conflict exists"; and (3) if there is conflict, examine the "strength of the interest of each jurisdiction in the application of its own law" to see which state's interest would be "more impaired." *Gustafson*, 294 F.R.D at 538. Under these principles, California law cannot apply to the proposed nationwide class.

## A. Material Differences In States' Laws Create A True Conflict

Right of publicity laws present "a crazy quilt of different responses at different times to different demands on the legislatures." J. Thomas McCarthy, *The Rights of Publicity and Privacy* 2d § 6:6 (2014). A chart reflecting variations in state law is attached at Buchweitz Dec. Ex. 1. Significant differences include:

issues and variances" in 48 states' laws) *amended* 273 F.3d 1266 (9th Cir. 2001).

[44] Ex. 7 (Dec. 5 Tr.) at 16:2-4 (COURT: "I didn't want to ignore the choice of law issue. … that is a concern that the Court has"), 16:12-19 (COURT: "Don't we have to look at the interests in each state in deciding that? Isn't that one of the factors in applying their law? And so, if we have individuals who played in another state, lived in another state and the only connection here is that the images were uploaded or something to that effect, isn't that an analysis that I would need to go through?" PL. COUNSEL: "It is ….").

[45] Plaintiff cannot correct this fatal deficiency on reply. *See In re Paxil Litig.*, 212 F.R.D. 539, 544-45 (C.D. Cal. 2003) (rejecting attempt to overhaul class definitions and proposed subclasses in reply papers).

[46] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).

- Certain states do not recognize a right of publicity.  Ex. 1 at p. 12, 17.

- The scope of unlawful use varies.  For example, Tennessee limits liability solely to uses for *advertising* and Illinois only bars use of a photo "to promote or entice the purchase of some other product."  *Id.* at p. 15.

- Statutes of limitation vary from one to six years.[47]

- Certain states do not allow (or limit) statutory or punitive damages.[48]

- Express/implied consent laws vary (and some states require written consent).[49]

- Some states exempt photographers displaying their work, and others exempt newsworthy events, public affairs, and sports broadcasts or accounts.[50]

These are material differences that create a true conflict, because they may "spell the difference between the success and failure of a claim." *Mazza*, 666 F.3d at 591; *see Gustafson*, 294 F.R.D. at 539.  For example, residents of the states that only bar *advertising* uses will have no claims in this case.  Residents of states with no right of publicity have no claim.[51]  The photographer and sports account exceptions preclude claims in some states.  The Court will need to determine the limitations period for each image, as well as whether each state applies the "single publication" rule.[52]  Further, claims by residents of at least ten states with a one-year statute of limitations are barred as against CBSI.[53]

---

[47] *See* Ex. 1; *see also Alberghetti v. Corbis Corp.*, 476 F. App'x 154, 155 (9th Cir. 2012); *Rivell v. Private Health Care Sys., Inc.*, 2009 WL 10318921, at *13 (S.D. Ga. Aug. 24, 2009).

[48] *See* Ex. 1 at p. 1, 7, 8; *see also Rivell*, 2009 WL 10318921 at *9–10 (finding measure of damages varied among 44 states, precluding class certification).

[49] *See* Ex. 1 at p. 3-6.  *See also Jones v. Corbis Corp.*, 815 F.Supp.2d 1108, 1113 (C.D. Cal. 2011) ("Consent to use a name or likeness need not be express or in writing, but it may be implied from the consenting party's conduct and the circumstances of the case.")), *aff'd* 489 F.App'x. 155 (9th Cir. 2012)).

[50] *See* Ex. 1 at p. 6-7.

[51] If Wyoming law applies, Plaintiff has no claim.  *See, e.g.*, *Byrd v. Aarons, Inc.*, 14 F.Supp.3d 667, 693 (W.D. Pa., 2014); Ex. 1 at p. 18.

[52] *Compare*, *e.g.*, *Yeager v. Bowlin,* 693 F.3d 1076, 1081-82 (9th Cir. 2012) (California applies single publication rule) *with Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1190-91 (Okla. 2011) (Oklahoma may apply rule of discovery).

[53] The Complaint was filed June 11, 2013 and CBSI was added on April 9, 2014, more than one year after the first publication of many photos in August 2012. Plaintiff cannot invoke the "relation back" doctrine because he chose not to

CBSI'S MEM. OF LAW IN OPP. TO MOT. FOR CLASS CERTIFICATION

10

CASE NO. SACV13-00876 JLS (RNBX)

## B. A Nationwide Class Impairs Foreign States' Interests

As the Ninth Circuit has recognized, "[e]very state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591-92 (citations omitted). In "cases based on publicity rights," courts "have typically selected the law of the property owner's domicile when resolving choice of law questions under California's governmental interests test." *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1028 (C.D. Cal. 1998).[54] Here, potential class members hail from across the country. *See supra* n. 34. As in *Mazza*, 666. F.3d at 594, California's interest in applying its laws to residents of foreign states is "attenuated," while those states' interests are directly implicated and impaired.[55]

For these reasons, courts have denied certification of nationwide right of publicity classes. *See, e.g.*, *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 581 (C.D. Cal. 2010), *aff'd* 476 F.App'x 154 (9th Cir. 2012); *Rivell*, 2009 WL 10318921, at *14. Establishing just Lightbourne's domicile shows why certification is improper. Plaintiff has been a resident of Wyoming and Texas, and had photos taken in Texas and New Mexico. He never lived in or played in a game in California.[56] Thus, California's interest is attenuated, while each class

[54] *See also Motschenbacher v. R. J. Reynolds Co.*, 498 F.2d 821, 823 n. 4 (9th Cir. 1974) (plaintiff's domicile state is normally state of greatest injury); *Page v. Something Weird Video*, 908 F.Supp. 714, 716 (C.D. Cal. 1995) (same); *Dryer v. NFL*, 55 F.Supp.3d at 1196 (D. Minn. 2014) (Texas law applied to plaintiff who lived and played only in Texas).

[55] By contrast, in *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001), the court concluded, in a case brought by individuals, not a putative nationwide class, involving the use of photos in an advertising campaign, that Hawaii's interests were less impaired where Hawaii had not yet enacted a right of publicity statute. Here, the putative class includes residents of dozens of states that have expressed government interests through relevant statutes and case law.

[56] The photos were uploaded and on servers in multiple states (*see* Schoenherr Dec. ¶¶ 3, 4), undermining Defendants' location as grounds for applying California law. Also, where materials are published in many states, plaintiff's domicile is the key relationship. *See Guzman v. Bridgepoint Educ., Inc.*, 2015 WL 1396650, at *23-24 (S.D. Cal. Mar. 26, 2015); *Page*, 908 F.Supp. at 715-16.

The footnote text at the top continues: initially sue CBSI. *See* Pl. Dep. at 63:1-21; *In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*, 615 F.Supp.2d 1018, 1040-41 (N.D. Cal. 2009).

members' home state's interest is potentially impaired.  Tucker Rep. Exs. 14-15 & ¶ 147 (majority of photo orders had a school and a shipping address in different states)

## III.    Individualized Questions Of Fact And Law Predominate

### A.    Multiple Affirmative Defenses Will Need To Be Litigated

Every individual photo, website, and athlete requires individual factual inquiries to assess, among other things, actual or implied consent, whether the images are used to "report on, publish and express matters in the public interest," and/or if they are used "in connection with" a sports account.  *See* Order, dated Sept. 8, 2014, Dkt. 107 at 5-7, 12-13.  Courts have denied class certification on these bases.  *See, e.g.*, *Block v. Major League Baseball*, 65 Cal.App.4th 538, 544-46 (Cal. Ct. App. 1998) ("the trial court would be obligated to evaluate" defenses including consent that might not be common, a "strong barrier to certification").  As *Dukes* affirmed, "a class cannot be certified on the premise that [CBSI] will not be entitled to litigate its … defenses to individual claims."  131 S.Ct. at 2561.

### 1.    Express and Implied Consent

Courts have repeatedly held that consent is not susceptible to common proof.  *See Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 444 (C.D. Cal. 2012) (court "would need to inquire into each player's manifestation of consent," which would "necessarily vary"); *Block*, 65 Cal.App.4th at 544 (consent was not common for right of publicity class and court was "obligated to evaluate each of the[] defenses for each member of the class, weigh[ing] heavily against certification"); *Jones*, 815 F.Supp.2d at 1117 (consent "is highly individualized and depends on the circumstances surrounding each [use], Plaintiff's knowledge of the circumstances, Plaintiff's past industry experience and conduct, and other evidence of Plaintiff's conduct that would reasonably imply consent.").

Lightbourne himself exemplifies the individualized issues inherent in the questions of both express and implied consent.  The undisputed record shows that

Lightbourne consented to the challenged uses, both expressly and impliedly.[57]

As to express consent, other student-athletes likewise signed releases (though some may not have), and the written consents vary.[58]  And, because consents were signed in different states, their enforceability is governed by different state laws.[59]  Resolving enforceability will require individual inquiries into class members' ages at the time(s) they signed; whether authorized representatives signed on behalf of minors; whether a form signed by a minor was later ratified; and, if any consents are ambiguous, the circumstances of their execution.  *See Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013) ("express consent should be evaluated on an individualized basis" and defeats predominance).[60]

Implied consent is a separate defense also subject to individual issues.  *See Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. 1994) (finding implied consent where plaintiff expressed excitement about and did not object to use); *Jones*, 815 F.Supp.2d at 1114 (finding consent is measured from plaintiff's "manifested action or inaction" and plaintiff impliedly consented to photographers who regularly took photos at events she attended and "would have

---

[57]  *See* Pl. Dep. at 21:14-17, 22:1-24, 34:14-35:8, 194:23-195:5; Exs.19-21 (Lightbourne Consents); *see also* Tucker Rep. ¶¶ 107-113.

[58]  *See, e.g.*, Ex. 29-32.  For example, one consent states: "Johns Hopkins Athletics has partnered with Printroom to offer photos of individual teams and athletes for sale … I hereby authorize Johns Hopkins University, its agents, and its authorized licensees to make copies of, use, sell and distribute, directly or through a third party, any photographic or other images taken in connection with my participation" on a Johns Hopkins team.  Ex. 30 at CBSI111106.

[59]  For example, the Lightbourne Consents were executed in Texas, which has "long recognized a strong public policy in favor of preserving the freedom of contract." *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 555 (Tex. 2001) (superseded by statute on other grounds).  The Court would also have to analyze Cal.Civ.Code § 1646 to determine which state's law applies. *See, e.g., Rutherford v. FIA Card Servs., N.A.*, 2012 WL 5830081, at *2-3 (C.D. Cal. Nov. 16, 2012).

[60]State law varies on enforceability of consents, including as to unconscionability and extrinsic evidence. *See, e.g., Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1177 (11th Cir. 2010).

to display their photographs to sell them"), *aff'd* 489 F.App'x at 1567 (consent "determined objectively from the perspective of a reasonable person"); *Dryer*, 55 F.Supp.3d. at 1200 (plaintiffs knew NFL filmed games and thus consented to use in promotional films); *Rivell v. Private Health Care Sys., Inc.*, 887 F.Supp.2d 1277, 1291 (S.D. Ga. 2012) ("[C]onsent is particularized and fact-intensive" and "not apt for singular determination in a case involving scores of plaintiffs.").[61]

Here, in addition to signing the Lightbourne Consents, Lightbourne knew photographers were taking his photos at events, that they could distribute those photos, that they (or their employer) owned those photos, and did not object to having his photo taken or sold by UTEP or its agents. *See supra* p. 5-6. Putative class members also may have impliedly consented by seeking publicity, declining to object, or by purchasing or having relatives purchase their images.[62] Also, while Plaintiff was given verbal instructions before signing his consent (*supra* p. 5), others may have signed or not under different directions. As the record demonstrates, there were diverse methods of valid implied consent that may differ as to each image and each putative class member according to their dealings with the photographer, their school, CBSI, and buyers. Accordingly, the Court would have to undertake a staggering number of individualized inquiries to ascertain whether each putative class member's conduct implied consent.

Lightbourne's attempt to circumvent his express and implied consent based on NCAA rules is meritless. Mot. at 18-19. NCAA Rule 12.5.2 does not prohibit the sale of photos for private use, and other NCAA rules expressly permit the sale of photos in various circumstances. Far from photos being considered a forbidden commercial product, the NCAA actually revised its rules a decade ago

---

[61] Courts have rejected publicity claims based on implied consent. *See, e.g., Madama v. Genesis Rehab Serv.*, 2014 WL 3695976, at *6 (D.N.J. Jul. 24, 2014); *Churchill In Crestwood, LLC v. Schwartz*, 2011 WL 7109212, at *15 (W.D. Mo. Jan. 27, 2011); *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 360 (1952).

[62] *See* Pl. Dep. at 135:11-19, 136:4-21; Exs. 26, 33 (CBSI-Lightbourne0284521; 0145201) (purchases by student-athlete); Exs. 34-36 (CBSI-Lightbourne0095091; 0077842; 0441901) (purchases by relatives).

to eliminate photos from a list of such products.[63]  Plaintiff has no evidence to support his argument, and omits relevant testimony that Lightbourne could have played intercollegiate sports even if he declined to sign UTEP's consent (*see* Stull Dep. at 44:14-16), and that eligibility was in no way affected by NCAA schools' sale, through agents including CBSI, of student-athletes' images (as opposed to if a student-athlete herself sought to profit from her likeness).  *See id.* at 64:22-65:11; *see also id.* at 90:7-25 (use of photos by "a car dealership" would violate NCAA rules, but photos sold to a student-athlete's relatives would not).[64]  Plaintiff's new allegation about advertising revenue is a red herring; the record shows *no* advertising was ever sold on University Photo Stores.  *See supra* p. 3.

Indeed, the sale of NCAA athlete photos online was recently deemed permissible by a court in this district in a case involving online sales of photos of student-athletes participating in athletic events.  *Maloney v. T3Media, Inc.* 2015 WL 1346991 (C.D. Cal. Mar. 6, 2015) (applying copyright preemption doctrine).  Plaintiff cites neither any authority that CBSI's alleged violation of NCAA rules is a tort, nor any evidence of any finding that CBSI actually violated any rule.  Likewise, Plaintiff cites no authority that a private association's eligibility rules govern right of publicity claims generally, or the issue of express or implied legal consent specifically.  Instead, Plaintiff relies on his and his counsel's own self-serving interpretations of those rules.  Mot. at 18-19.  This is not competent evidence to satisfy Plaintiff's burden.  *See Comcast*, 133 S.Ct. at 1433-35.

## 2.  First Amendment and Statutory Defenses

An image-by-image analysis is also required to determine if each use has First Amendment or statutory protection.  If uses are incidental, or photos "report

---

[63]  *See*  https://web1.ncaa.org/LSDBi/exec/propSearch  (search  "I-2005-1"  in Proposal Number field and click button labeled "Go Search") (last visited May 24, 2015) (removing "photographs" from the list of "commercial" items).

[64]  In cases regarding NCAA eligibility decisions, courts have not voided challenged commercial transactions.  *See Bloom v. NCAA*, 93 P.3d 621 (Colo. Ct. App. 2004); *NCAA v. Lasege*, 53 S.W.3d 77 (Ky. 2003).

on, publish and express matters in the public interest," or are used "in connection with" a "news, public affairs, or sports … account," CBSI has no liability under the First Amendment and/or Cal. Civ. Code § 3344(d).[65]   *See, e.g.*, *Dryer*, 55 F.Supp.3d at 1200-02 (granting summary judgment on these grounds).[66]   Indeed, Plaintiff claims each photo concerns an "NCAA student-athlete[] playing in an NCAA-sanctioned event" (Mot. at 12), which at a minimum involves events in the public interest.

Individual analyses will also be needed to determine which uses fall under Section 3344(b)(2)'s "definable group" rules (and other states' equivalents), which prohibit group representation of "a crowd at any sporting event … or a baseball team." Cal. Civ. Code § 3344(b)(2).  The intent of the legislature was to avoid class actions by persons photographed in a crowd.[67]  Yet, Dr. Bardwell's sample included several crowd photos, such as a football team posing and 74 members of Tennessee's crew team.  Tucker Rep. ¶ 156.  Not only are these

---

[65] *See, e.g.*, Pl. Dep. at 144:10-145:14 (some photos were captioned with information reporting on depicted athletic events); Ex. 28 ("K-State's Lilla Porubek celebrates an ace serve against Saint Mary's at Ahearn Field House in Manhattan, Kansas on September 6, 2012"); Ex. 26 ("Collin Taylor makes an attempt at 7-1 in the high jump at the 2010 Drake Relays, April 24, 2010").

[66] It is irrelevant that a limited number of photos were sold on products.  Courts distinguish between a use that "merely advertises a product or service for business purposes" and a use that "*is the product*." *Hilton v. Hallmark Cards*, 599 F.3d 894, 855 n.7 (9th Cir. 2010) (emphasis added).  A work may be "sold for a profit, but that does not make it commercial speech for First Amendment purposes." *Id*.; *Rosa and Raymond Parks Inst. For Self-Dev. v. Target Corp.*, 2015 WL 519057, at *5-6 (M.D. Ala. Feb. 9, 2015) (sale of plaque with plaintiff's image served a commercial purpose, but was protected by First Amendment); *Foster v. Svenson*, 7 N.Y.S.3d 96 (1st Dep't 2015) (photographer's sale of photos of neighbors was not a "use for advertising or trade purposes").

[67] *See* Robert A. Miller, *Commercial Appropriation of an Individual's Name, Photograph or Likeness: A New Remedy for Californians*, 3 PAC. L.J. 651, 665 (1972).  Indeed, the legislature included, then struck, a provision providing for right of publicity class actions.  *Compare* Ex. 37 (A. Comm. on Judiciary, Analysis of A.B. 826, at 2 (May 3, 1971) ("This bill sets up right of class action"), *with id.*, at 1 (Jun. 14, 1971) (right of publicity not "proper subject for class action")).

photos not properly part of a California class action, they exemplify other individual issues, including that the Tennessee photo is not an advertisement, so it is not actionable.   *See supra* p. 10.   In short, First Amendment and statutory defenses necessitate photo-by-photo analyses that overwhelm common issues.

### 3. Copyright Preemption

Where plaintiffs do not "identify a use of their likenesses independent" of "the display, reproduction, and distribution of the copyrighted images in which they are depicted," their claims are preempted. *Maloney*, 2015 WL 1346991, at *9 (striking putative right of publicity class action involving online sale of NCAA student-athlete images).   At the motion to dismiss stage, the Court concluded that the basis for Plaintiff's claims was "not the publication of the photograph itself," but rather "the use of his likeness," precluding preemption.   While CBSI asserts that recent case law and the record requires striking the FAC, at a minimum, a photo-by-photo inquiry is needed to determine if each putative class member can "identify some use of their likenesses (as captured in the photographs) independent of the mere sale of the pictures."   *Id.* at *8; *see also Ray v. ESPN, Inc.*, 2015 WL 1810486, at * 4 (8th Cir. Apr. 22, 2015); *Dryer*, 55 F. Supp. 3d at 1202.

### 4. Communications Decency Act

Because each photo and each University Photo Store had its own website, to address CBSI's defense based on the Communications Decency Act, 47 U.S.C. § 230 *et seq.* ("CDA"), the Court would have to engage in serial inquiries into who uploaded the challenged content.   As Plaintiff concedes, schools primarily uploaded the photos.   Mot. at 4; *see also* Schoenherr Dec. ¶ 4.   Thus, for at least certain of the uses, CBSI did not "materially contribute" to the content, and is immune.   *See Gavra v. Google, Inc.*, 2013 WL 3788241, at *2 (N.D. Cal. Jul. 17, 2013) ("providing third parties with neutral tools to create web content ... does not create liability"); *Evans v. Hewlett-Packard Co.*, 2013 WL 5594717, at *4 (N.D. Cal. Oct. 10, 2013) (finding immunity where third party "provided the

published content and defendants only provided the editorial parameters"). Common questions do not predominate where certain claims are protected under the CDA and therefore not actionable. *See Mazur v. eBay, Inc.*, 257 F.R.D. 563, 570 (N.D. Cal. 2009).

## B. Injury And Damages Will Need To Be Litigated Individually

The issues of class-wide injury and damages are also not susceptible to common proof. "Plaintiffs may not simply demand \$750 in statutory damages in reliance on a bare allegation that their commercial endorsement has provable value, but rather must 'prove actual damages like any other plaintiff whose name has commercial value.'" *Fraley v. Facebook*, 830 F.Supp.2d 785, 809-10 (N.D. Cal. 2011) (quoting *Miller v. Collectors Universe, Inc.*, 159 Cal.App.4th 988 (2008)). By enacting Section 3344's minimum statutory damages, "the Legislature provided a practical remedy for a non-celebrity plaintiff … who suffers primarily mental harm," but to the extent plaintiff had a commercial loss "his recourse was to prove actual damages." *Miller*, 159 Cal.App.4th at 1002, 1006; *see also Perkins v. LinkedIn*, 53 F.Supp.3d 1222, 1246 (N.D. Cal. 2014) (dismissing statutory damages claim where plaintiff did not allege mental harm).

Even assuming California law applies, Plaintiff has not and cannot come forward with common proof of any injury or damages. Plaintiff admitted he suffered no mental anguish, and thus has no claim for statutory damages.[68] At most, Plaintiff testified the sale of one of his photos to his then-girlfriend caused him injury in the amount of \$6.[69] Even for that claim (which CBSI denies), Plaintiff has no basis for seeking 50% of the sale price of that photo. Further, as described above, Plaintiff had no objection as long as UTEP was selling the Lightbourne Photos, even if through an agent – exactly what happened here.

Similarly, numerous putative class members or their relatives or friends not only willingly purchased the images at issue, they made specific requests for such

---

[68] *See* Pl. Dep. at 159:6-160:2.
[69] *See id*. at 158:16-23.

images to be made more readily available for display and purchase.[70]   Prof. Tucker's analysis shows that at least 38 percent of purchases were personal in nature, and certain class members may very well have *benefited*.   *See* Tucker Rep. Exs. 5-8, ¶¶ 10, 37-44, 50-113.[71]   Indeed, whether Plaintiff had a net economic benefit from the challenged conduct or suffered any potential injury at all depends on at least 14 factors.   *See* Tucker Rep. Exs. 1-2, Section V. By contrast, Plaintiff's expert has not offered any opinion or proposed methodology for determining the claimed injury on a class-wide basis.   *See* Tucker Rep. ¶¶ 150-159.   On this basis alone, the class cannot be certified.   *See Comcast,* 133 S.Ct. at 1432-33 (without viable method to show injury or damages class-wide, request for class certification should be rejected); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp., L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) ("[N]o circuit approves of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class.").[72]

Moreover, any damages for putative class members from states that do not provide statutory damages are inherently individualized, as "the value of each [individual]'s right of publicity [] depend[s], at least in part, on the level of his celebrity."   *Block*, 65 Cal.App.4th at 543; *see also* Tucker Rpt. ¶¶ 48, 95-105. Lightbourne conceded that putative class members' commercial injury would depend on their fame.[73]   In such cases, individualized damages defeat

---

[70] Stull Dep. at 91:3-93:16; 93:20-96:1; Pl. Dep. at 135:11-19, 136:4-21; Ex. 22_ (CBSI047314) (Johns Hopkins was "getting requests for team photos to be loaded so parents can purchase them"); Ex. 38 (CBSI132710) ("A [DePaul] parent is becoming a little overzealous in wanting these photos and we need to get them active on the pho[to] store as soon as possible.").

[71] *See also* Pl. Dep. at 44:2-12, 46:20-47:6; Stull Dep. at 91:3-93:16; 93:20-96:1.

[72] Further, Plaintiff presented no methodology for determining injury class-wide for putative class members who, unlike him, might testify that they suffered mental anguish. This precludes certification. *Stilson v. Reader's Digest Ass'n, Inc.*, 28 Cal.App.3d. 270, 274 (Cal. Ct. App. 1972).

[73] *See* Pl. Dep. at 58:20-25, 59:8-19.

predominance.  *See Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 617 (S.D. Cal. 2014) (citing *Comcast Corp*, 133 S.Ct. at 1433-35).[74]

For these reasons, courts routinely reject attempts to certify damages classes on behalf of team sport athletes.  *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2013 WL 5979327, at *9-10 (N.D. Cal. Nov. 8, 2013) (refusing to certify a damages class); *Block*, 65 Cal.App.4th at 544-46; *In re NCAA I-A Walk-On Football Players Litig.*, 2006 WL 1207915, at *10-14 (W.D. Wash. May 3, 2006).  The result should be the same here.

## IV.     Plaintiff Is Not Typical, And He Is Not An Adequate Representative

Rule 23(a)(3) requires that a representative's claims be typical of the class, and Rule 23(a)(4)'s adequacy inquiry "serves to uncover conflicts of interest between named parties and the class …."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Here, Plaintiff is not typical or adequate because he has no incentive to pursue claims of many other class members, and his own claims are vulnerable to various defenses.

First, as shown above, Lightbourne's claims fail because he consented to the challenged uses.  This alone renders him an inadequate representative of absent putative class members who may not have consented in similar fashion.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Second, as discussed, California law does not apply to Plaintiff.  Named plaintiffs subject to one state's right of publicity law will not be "typical" or "adequate" representatives of a nationwide class that includes members unable to show that state's law applies to them.  *Alberghetti*, 263 F.R.D. at 581, n.4.

Third, Plaintiff is antagonistic to putative class members who desire (or do not object to) their images being sold on the University Photo Stores, whether to

---

[74] Despite Plaintiff's claim (Mot. at 19), disgorgement and punitive damages are not "common" issues.  *See, e.g.*, *Marshall*, 2015 WL 2402355, at n.5 (regardless of how damages "are calculated in the collective, to allocate the proceeds … the court would still need to determine each player's entitlement based on the use and value of his likeness individually.").

increase their own publicity, or other reasons. *Alberghetti*, 263 F.R.D. at 578-79.[75] One such reason reflected in the record is that many student-athletes and their families desired to purchase the images at issue.[76]

Fourth, by expressly limiting his claim to statutory damages, Plaintiff is antagonistic to any more prominent putative class member who seeks actual damages, or any member not entitled to statutory damages because such remedies are not available under their state's law.[77] *See* Tucker Rep. ¶ 95-100. Election of a theory that does not align with some putative class members' potential recovery in favor of eliminating individual issues or to increase the aggregate recovery does not comport with Rule 23(a)(4). *See Amchem*, 521 U.S. at 625-27.

Plaintiff tries to avoid this issue by raising an "opt out." Mot. at 13. This is insufficient where, as here, *see infra* at Part V, it is impossible to determine who is in the class, much less give adequate notice. *See In re Paxil Litig.*, 212 F.R.D. at 545; *see also Valentino v. Carter Wallace,* 97 F.3d 1227, 1234 (9th Cir. 1996) (class must be sufficiently ascertainable for members to be able to "make an intelligent choice as to whether to opt out"); *see also* Tucker Rep. ¶¶ 136-42.

## V. The Proposed Class Is Not Ascertainable

Class definitions must identify "a distinct group of plaintiffs whose members [can] be identified with particularity." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *see also Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 523 (C.D. Cal. 2011) (class must be sufficiently

---

[75] *See also Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997) (finding a conflict where some putative class members "approved" of the challenged conduct); *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (denying certification of class of landowners near airport claiming decreased property value because some landowners benefitted from the airport).

[76] *See supra* p. 7; Tucker Rep. Exs. 5-9, 16 & ¶¶ 21-24, 55-64, 153-54; Ex. 39 (CBSI071787) (parent sought assistance buying son's photo); Ex. 40 (CBSI009381) ("[A] parent wants to buy our women's golf team picture…"); Pl. Dep. at 44:2-47:20 (ability to buy photos provided a benefit to student-athletes and families); Stull Dep. at 91:20-92:24.

[77] *See* Ex. 1 at p.15-17 (no statutory damages in Utah, Wisconsin, and Tennessee).

definite to determine if a particular person is a member). A class is only ascertainable if "defined by 'objective criteria' and if it is 'administratively feasible' to determine whether a particular individual is a member of the class." *Bruton v. Gerber Prods. Co.*, 2014 WL 2860995, at *4 (N.D. Cal. Jun. 23, 2014). Further, individuals must be "readily identifiable" in each work at issue. Cal. Civ. Code § 3344(b)(1). "A person [is] deemed to be readily identifiable from a photograph 'when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use.'" *Id*.

Plaintiff's class definition is entirely subjective and has changed repeatedly.[78]  Now, the class has been redefined as "[a]ny current or former NCAA student-athlete *whose name, assigned jersey number, or face (defined as a full face with two visible eyes*) appears in a photograph that was publically available on the website Printroom.com or whose name was used on Printroom.com." Mot. at 1 (emphasis added).[79]  Paradoxically, this seeming narrowing has led to an 800% increase in Plaintiff's estimation of the class size. Six months ago, class counsel swore the class size was 150,000 based on the same database available today. *See* Dkt. No. 118 at p. 17. Now, Plaintiff estimates over 1.12 million putative class members, with no explanation for the increase, and based on a misleading methodology. *See* Tucker Rep. ¶¶ 160-69.

Plaintiff's assertion that one can readily identify the class based on these new definitions and Dr. Bardwell's sample (Mot. at 15), is untrue. A significant number of photos do not even depict student-athletes, as confirmed by the nearly 20% of photos in Dr. Bardwell's sample without identifiable student-athletes. Aragon Dec. Ex. 28, at 14. Many others are not of an "NCAA sanctioned event." *See* Mot. at 12; Tucker Rep. ¶ 158-59. Some captions contain full descriptions of

---

[78] In the FAC ¶ 83, Plaintiff defined the class as: "[a]ny current or former NCAA student-athlete who appears in a photograph that is or was publically available on the website Printroom.com or whose name is or was used on Printroom.com."

[79] Plaintiff also has abandoned a Rule 23(b)(2) injunctive relief class. Mot. at 1.

who is depicted, while others omit or misidentify names.[80]  Visual examination of each photo is also necessary, including because two eyes may or may not be visible, and even then the subject may not be readily identifiable.  *See* Tucker Rep. ¶¶ 89-91, 160-69.[81]  Dr. Bardwell's opinion does not relieve the Court from undertaking a photo-by-photo analysis to ascertain the class.  At best, the only way to make feasible determinations as to who satisfies the class definition would be to make close, individualized determinations as to each photo; Plaintiff has offered no valid methodology for that process.  *See id*. ¶¶ 114-30.  A damages class cannot be certified absent a "feasible method for determining on a class-wide basis which student-athletes appeared" in the relevant media.  *In re NCAA Student-Athlete Name & Likeness Licensing Litig*., 2013 WL 5979327, at *9.

Moreover, the class definition includes members subject to various defenses.  The Court would have to decide merits of individual claims to even determine who is eligible to be in the class, and such classes are not ascertainable.  *See Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 558 (C.D. Cal. 2012) (class not ascertainable where at least some putative class members consented to challenged acts).[82]

Finally, where, as here, a class of NCAA student-athletes is not limited by categories like division, school, or sport, the "sheer breadth of the class definition makes it difficult to ascertain the individual members of the class in practice."  *In re NCAA Student-Athlete Concussion Injury Litig*., 2014 WL 7237208, at *7

---

[80]*See* Tucker Rep. ¶ 91; *compare, e.g.*, Ex. 41 (CBSI-Lightbourne0366191); Ex. 42 (CBSI-Lightbourne0428108) *with* Ex. 11 (CBSI-Lightbourne0169741).

[81] Jersey numbers are also insufficient, as not every sport has jersey numbers (Tucker Rep. ¶¶125-30) and "because NCAA teams frequently allow multiple players to wear the same jersey number."  *See In re NCAA Student-Athlete Name & Likeness Licensing Litig*., 2013 WL 5979327, at *10, n.7.

[82] *See also Ballard v. Bank of Am., N.A.*, 2013 WL 4807193, at *3 (C.D. Cal. Sept. 6, 2013) (class not ascertainable because individual statute of limitations inquiries were required to determine who was in class); *Gannon v. Network Tel. Servs., Inc.*, 2013 WL 2450199, at *2-3 (C.D. Cal. June 5, 2013) (class not ascertainable because individual inquiry and mini-trials required on consent).

(N.D. Ill. Dec. 17, 2014).  For all of these reasons, the proposed class cannot be ascertained in any efficient or objective manner and cannot be certified.

## VI.  This Class Action Is Not A Superior Method Of Adjudication

The purpose of a class action is to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617.  Here, however, depending on which state law governs, minimum statutory damages and attorneys' fees may be available, which courts recognize provide sufficient incentives for individual suits.  *See Alberghetti*, 263 F.R.D. at 582 (availability of attorneys' fees for right of publicity claims meant "there appears to be little reason why a class action is more efficient than individual actions.")[83]  Indeed, athletes often pursue non-class right of publicity actions.  *See, e.g.*, *Dryer*, 55 F.Supp.3d. at 1186; *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 407 (Cal. Ct. App. 2001).

Further, the lack of a workable trial plan and need for individualized inquiries renders the class unmanageable.  *See Pryor*, 278 F.R.D. at 536 (no certification where "hundreds of mini-trials" required); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 654 (C.D. Cal. 1996) (certification precluded by individual inquiries despite common questions).  Thus, a class action is not superior here.

## VII.  Plaintiff's Proposed Notice Plan Is Inadequate

Given the broad and amorphous class definition, and uncertainty as to how schools maintain data for current and former student-athletes, there is no reliable record for notice.  *See In re NCAA Student-Athlete Concussion Injury Litig.*, 2014 WL 7237208, at *7-8; *see also* Aragon Dec. ¶ 36; Dkt. 118-6 ¶ 9.  Class counsel admitted the NCAA does not maintain last known addresses of student-athletes, and even if it did, addresses would be invalid because student-athletes are transitory.  Dkt. 118-6 ¶ 9; *see also* Tucker Rep. ¶ 133.  Thus, Plaintiff admits he

---

[83] *See also Blanco v. CEC Entm't Concepts*, 2008 WL 239658, at *2 (C.D. Cal. Jan. 10, 2008) (same); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440, at *7 (S.D. Cal. Aug. 28, 2012) (same).

cannot send notice via direct mail (Mot. at 16), and does not cite any class notice expert. Instead, Plaintiff cites his counsel's experience with a database of students featured in videogames. Aragon Dec. ¶ 34. But, that database involved only Division I men's basketball and football, not 23 NCAA sports (men's and women's) in all three Divisions.

Plaintiff's "self-identification" plan (Mot. at 15) is infeasible on this record because, given the various obstacles to ascertaining who is in the proposed class, there are no reliable means of self-identification. Tucker Rep. ¶¶ 114-35; *id*. at ¶ 122 (reviewing one photo per minute would take a Tennessee football player 11 days to review all Tennessee football photos).[84] The proposal to post public-facing notices on social media sites also fails, as it is not directed to private, personalized notifications to identified potential plaintiffs. *See, e.g.*, *Mark v. Gawker Media LLC*, 2015 WL 2330079, at *1 (S.D.N.Y. Mar. 5, 2015). Lightbourne and Prof. Tucker agree that social media advertising is not a good way to notify this class. *See* Lightbourne Dep. at 14:9-22; Tucker Rep. ¶ 134.

## CONCLUSION

Based on the foregoing, CBSI respectfully requests the Motion be denied.

Date: May 29, 2015

JAMES W. QUINN (*pro hac vice*)
YEHUDAH L. BUCHWEITZ (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Bruce Isaacs*
BRUCE ISAACS (Bar No. 100296)
Email:bruceisaacs@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 633-6808
Facsimile: (213) 633-6899

Attorneys for Defendant CBS INTERACTIVE INC.

---

[84]While self-identification "may suffice for some settlement-only classes…those classes need not satisfy [the] 'manageability' requirement." *Martin v. Pacific Parking Sys., Inc.*, 583 F.App'x 803, 804 n.3 (9th Cir. 2014); *see also Alberghetti*, 263 F.R.D. at 577 (notice that requires users to search websites inadequate); *Walter v. Hughes Commc'ns*, 2011 WL 2650711, at *15-16 (N.D. Cal. Jul. 6, 2011) (same).

CBSI'S MEM. OF LAW IN OPP. TO MOT. FOR CLASS CERTIFICATION  25  CASE No. SACV13-00876 JLS (RNBX)

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of the law firm of DAVIS WRIGHT TREMAINE LLP, and that on the date shown below, I caused service of a true and correct copy of the attached:

CBS INTERACTIVE INC.'S MEMORANDUM OF LAW AND DECLARATIONS OF YEHUDAH L. BUCHWEITZ, VINH TO, AND JON SCHOENHERR IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS ACTION CERTIFICATION

to be completed by:

_____        personally delivering

_____        delivery via Nationwide Legal Services

_____        sending via Federal Express or other overnight delivery service

_____        depositing for mailing in the U.S. mail with sufficient postage affixed thereto

_____        delivery via email

  X          electronic filing, and thereby delivery via e-mail to:

| | |
|---|---|
| Robert A. Carey, Esq.<br>Leonard W. Aragon, Esq.<br>Rachel E. Freeman, Esq.<br>Steve Berman, Esq.<br>Hagens Berman Sobol Shapiro LLP<br>11 West Jefferson Street, Suite 1000<br>Phoenix, AZ 85003<br>rob@hbsslaw.com<br>leonard@hbsslaw.com<br>rachelf@hbsslaw.com<br>steve@hbsslaw.com<br> (Attorneys for Plaintiff Yahchaaroah Lightbourne) | Stuart M. Paynter, Esq.<br>Celeste H.G. Boyd, Esq.<br>The Paynter Law Firm PLLC<br>1200 G. Street N.W., Suite 800<br>Washington, DC 20005<br>stuart@paynterlawfirm.com<br>cboyd@paynterlawfirm.com<br>(Attorneys for Plaintiff Yahchaaroah Lightbourne) |
| Christy L. Bertram, Esq.<br>Johnson & Bertram LLP<br>1 Park Plaza, Suite 600<br>Irvine, CA 92614<br>cbertram@johnsonbertram.com<br>(Attorney for Defendant Brand Affinity Technologies, Inc.) | William S. Sowders. Esq.<br>Gust Rosenfeld PLC<br>One East Washington, Suite 1600<br>Phoenix, Arizona 85004<br>wsowders@gustlaw.com<br>(Attorneys for Plaintiff Yahchaaroah Lightbourne) |

Professional Photo Storefronts, Inc.
c/o Carlton X. Osborne
2520 Mission College Blvd., Suite 102
Santa Clara, CA  95054
Carlton.x.osborne@gmail.com
(VIA COURTESY EMAIL)

Printroom, Inc.
c/o Carlton X. Osborne
2520 Mission College Blvd., Suite 102
Santa Clara, CA  95054
Carlton.x.osborne@gmail.com
(VIA COURTESY EMAIL)

Dated:  May 29, 2015

/s/*Lina Pearmain*
Lina Pearmain