# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAHCHAAROAH LIGHTBOURNE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PRINTROOM INC., et al.,<br><br>Defendants. | CASE NO. SACV 13-876-JLS (RNBx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. 158)** |

## I. INTRODUCTION

Before the Court is a Motion for Class Certification filed by Plaintiff Yahchaaroah Lightbourne. (Mot., Doc. 158.) Defendant CBS Interactive, Inc. opposed, and Lightbourne replied. (Opp., Doc. 167; Reply, Doc. 223.) Having read and considered the papers, heard oral argument, and taken the matter under submission, the Court DENIES the Motion.

## II. BACKGROUND

Plaintiff Yahchaaroah Lightbourne played college football at the University of Texas at El Paso from 2009 to 2011. (Opp. at 3.)

Defendant CBS Interactive, Inc. ("CBSI") entered into agreements with various National Collegiate Athletic Association member institutions, including UTEP, to provide various services for those institutions' athletic department websites, including selling photographs of student-athletes on the websites. (Mot. at 3.) CBSI and the institutions would then split revenues from online photograph sales. (Id.)

To facilitate these sales, CBSI partnered with Defendant Printroom, which provided "custom branded [photo] storefronts to match the look and feel" of each school's official athletic website. (Id.) This provided an "integrated photo experience that drives ad impressions, social media activity and traffic, and most of all revenue." (Id.) Visitors to these online photo stores could purchase photographs of student-athletes either alone or affixed to merchandise such as "mugs, holiday ornaments, mousepads, note pads, magnets, playing cards and more." (Id. at 3-4.) More than 10,000 photographs were purchased alone or in various frames. (Opp. at 3.) Sales of other merchandise were meager; only three customers ever bought a photo on a mug, mousepad, magnet, calendar, or greeting card, while three sets of greeting cards were sold to two buyers, both of whom shared a last name with the depicted athlete. (Id. at 2-3.) Twenty four diploma frames were sold, however, the photos affixed to ten of them did not depict student-athletes, while ten were

2

sold to relatives of the depicted student-athletes.  (Id. at 3.)

Once the arrangement with Printroom began, CBSI provided schools with instructions on how to upload photographs to CBSI's online management tool, known as Netitor.  CBSI would then transfer those photographs to the photo stores.  (Mot. at 4.)  The photographs were typically uploaded by photographers working for, or affiliated with, the university athletic departments.  (Opp. at 2.)

UTEP's photo store displayed a total of nine images of Lightbourne, each of which was taken by a UTEP staff photographer and posted in an album titled with the depicted game or practice with descriptions including Lightbourne's name and jersey number.  (Id. at 4.)  Eight of the photos depicted Lightbourne in a game; the ninth depicted Lightbourne with two members of UTEP's athletic department staff.  (Id.)  One customer purchased a single a photograph depicting Lightbourne – a 5x7 photograph purchased by his then-girlfriend.  (Id.)  No merchandise bearing Lightbourne's likeness was ever sold.  (Id.)

On June 11, 2013, Lightbourne filed a Class Action Complaint for violation of his right of publicity against Printroom as well as Defendants Professional Photo Storefronts, Inc. and Brand Affinity Technologies, Inc.[1]  (Compl., Doc. 1.)  On April 10, 2014, Lightbourne filed the operative First Amended Class Action Complaint adding CBSI as a Defendant.  (FAC, Doc. 69, ¶¶ 91-102.)  In addition to the right of publicity claim, the FAC also asserts a claim against all Defendants for civil conspiracy.

On September 23, 2014, CBSI crossclaimed against the other Defendants for indemnity, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.  (Answer, Affirmative Defenses, and Crossclaims, Doc. 108.)  CBSI alleges they are obligated to indemnify it to the extent it is liable to Plaintiff or any certified class.  (Id.)

---

[1] The Clerk has entered default against Printroom and Professional Photo Storefronts.  (Doc. 152.)  On December 15, 2014, Brand Affinity Technologies filed for bankruptcy, thus staying the case against it.  (Doc. 138.)

3

Lightbourne now seeks certification of the following nationwide class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) as to his right of publicity claim under Cal. Civ. Code § 3344:

> Any current or former NCAA student-athlete whose name, assigned jersey number, or face (defined as a full face with two visible eyes) appears in a photograph that was publically available on the website Printroom.com or whose name was used on Printroom.com.

(Mot. at 1.) It is unknown how many student-athletes fall within this definition, however, Lightbourne's expert estimates the online photo stores displayed 638,552 images containing the likenesses of more than 1,120,000 student-athletes.[2] (Reply at 22.)

## III.  LEGAL STANDARD

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests

---

[2] As Lightbourne notes, this is the number of identifiable athletes, not the number of unique athletes. (Reply at 22.)

4

of the class.

Fed. R. Civ. P. 23(a).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id*. at 2548. Here, Lightbourne seeks certification of the class under Rule 23(b)(3), which permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**IV.   DISCUSSION**

    **A.   <u>Choice of Law</u>**

Before proceeding to the merits of this Motion, the Court must first determine what law applies to this putative nationwide class. Lightbourne contends California's right of publicity statute may properly govern the claims of class members in all fifty states; CBSI contends the law of the state in which each class member resides applies.[3]

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or

---

[3] Notably, Lightbourne did not discuss choice of law in his Motion, reserving discussion of this issue for his Reply.

5

significant aggregation of contacts' to the claims of each class member." *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)). Once the class-action proponent makes this showing, the burden shifts to the other side to demonstrate "that foreign law, rather than California law, should apply to class claims." *Wash. Mut. Bank*, 24 Cal. 4th at 921.

California law may only be used on a classwide basis if "the interests of other states are not found to outweigh California's interest in having its law applied[.]" *Id*. To determine whether the interests of other states outweigh California's interest, the court applies a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 87-88 (2010)).

### 1. <u>Material Differences Among States' Right of Publicity Laws</u>

The Court first determines whether the relevant laws of the fifty states differ. "The fact that two or more states are involved does not in itself indicate there is a conflict of

6

laws problem." *Wash. Mut. Bank*, 24 Cal. 4th at 919-20. "A problem only arises if differences in state law are material, that is, if they make a difference in this litigation." *Mazza*, 666 F.3d at 590.

Here, the fifty states' right of publicity laws vary significantly, and these differences are material to this litigation. As a threshold matter, while most states recognize the tort of right of publicity, some do not. *See Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 693 (W.D. Pa. 2014) (There is no tort cause of action for the invasion of privacy recognized by the State of Wyoming.); *cf. City of Grand Forks v. Grand Forks Herald, Inc.*, 307 N.W.2d 572, 578 n.3 (N.D. 1981) ("Whether or not the tort of invasion of privacy exists under North Dakota law has not been determined."). The Court cannot imagine a more material difference than whether a right of action exists or not. Next, of those states that do recognize a right of publicity, some provide for liability for *all* commercial uses of a plaintiff's likeness, while others impose liability only for use of a plaintiff's likeness in connection with an advertisement or solicitation. *Compare* Haw. Rev. Stat. § 482P-5 (prohibiting unauthorized use of an individual's likeness "on or in goods, merchandise, or services . . . or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations . . . ."), *with* Tenn. Code Ann. § 47-25-1105 (prohibiting use of an individual's likeness "as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services . . . ."). Statutes of limitations also vary significantly, as do the states' rules regarding when a right of publicity claim accrues. *Compare* La. Rev. Stat. Ann. 51:1409 (one year statute of limitations), *with* Fla. Stat. Ann. § 95.11(3)(f), (p) (four year statute of limitations); *compare Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012) (California right of publicity claim accrues upon first publication), *with Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1190-91 (Okla. 2011) (right of publicity claim accrues when party knows or reasonably should have known of the misappropriation). Finally, the measure of damages

available to a prevailing plaintiff differ greatly.  *See* Okla. Stat. Ann. tit. 12, § 1449 (actual damages only plus punitive damages if applicable); Cal. Civ. Code § 3344(a) (greater of actual damages or $750 in statutory damages); Ohio Rev. Code Ann. § 2741.07(A)(1)(a)-(c) (greater of actual damages or $2,500 to $10,000 plus punitive damages if applicable).

For these reasons, the Court has no trouble concluding that the various states' right of publicity laws differ significantly, and that these variances are material to this litigation. The Court therefore proceeds to the next step of its analysis.

### 2. <u>Foreign States' Interests In the Application of Their Laws</u>

The Court next considers each state's interest in the application of its own law to its residents' claims.  The Ninth Circuit has recognized that "[e]very state has an interest in having its law applied to its resident claimants."  *Mazza*, 666 F.3d at 591-92 (quoting *Zinser*, 253 F.3d at 1187).  Lightbourne nevertheless argues that because CBSI is a California defendant, "other states' interests are not implicated."  (Reply at 8.)

This is not so.  Unlike the consumer protection cases cited by Lightbourne, the injury here is to an intellectual property right.  *See Comedy III Productions. Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (2001) (holding the right of publicity is a form of intellectual property); *see also ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property right of recent origin which has been defined as the inherent right of every human being to control the commercial use of his or her identity."); 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 28.1 (4th ed. 2003) ("The right of publicity is property, and is properly categorized as a form of intellectual property.").  It is well established in California that the intellectual property owner's resident state has an interest in applying its own law to such an injury.  Cal. Civ. Code § 946 ("If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile.").

1  Lightbourne nevertheless suggests this general rule does not apply here because "in
2  cases involving resident defendants, foreign states do not have a legitimate interest in
3  *limiting* the amount of recovery for nonresident plaintiffs under California law." (Reply at
4  8) (emphasis added). For this proposition, Lightbourne relies on the Ninth Circuit's
5  decision in *Downing v. Abercrombie & Fitch*. There, the court held California law applied
6  to Hawaiian plaintiffs' right of publicity claims where the infringing publications were
7  distributed in California. 265 F.3d 994, 1006 (9th Cir. 2001). Crucially, however, the
8  court's conclusion that Hawaii lacked an interest in applying its law to the plaintiffs'
9  claims turned on the fact that Hawaii *had no right of publicity law* whatsoever:

> Hawaii . . . ha[s] no interest in limiting the extent of relief that its residents could obtain for a wrongful act against them in California . . . . Hawaii did not place any limitation on recovery; instead it simply did not provide for the extent of relief California does in this type of action. It is pure fancy to believe that Hawaii would wish to restrict its residents from recovery that others could obtain in California solely because it had not enacted a statute like California's to complement its common law action for the same offense. Hawaii had no interest in having its law applied to this action brought in California.

*Id.* at 1006-07. This reasoning is patently inapplicable here, where the vast majority of
states – now including Hawaii – *have* made conscious choices regarding the nature and
scope of relief a resident may seek for violation of his or her right of publicity. (*See*
Buchweitz Decl. Ex. 1.) *Mazza* instructs that these choices are entitled to respect. *See* 666
F.3d at 591-92 ("Every state has an interest in having its law applied to its resident
claimants"); *see generally id.* at 591-93; *cf. Gifford v. Nat'l Enquirer, Inc.*, No. CV 93-
3655 LGB (TX), 1993 WL 767192, at *4 (C.D. Cal. Dec. 7, 1993) (noting that New
York's failure to provide a cause of action "does not mean that New York has no interest
in this issue" but instead reflects its decision that "such causes of action 'would not strike

the appropriate balance between its citizens' individual privacy interests and the broader public interest in the free dissemination of information and ideas.'").

Accordingly, the Court concludes that foreign states have an interest in regulating conduct that affects the publicity rights of their residents.

### 3. Impairment of Foreign States' Interest

Having found that foreign states have an interest in the application of their law here, the Court must now determine which states' interests would be most impaired if their laws were not applied. Put another way, the Court must determine which states' interest in having its law applied is stronger – California or the state where a given class member resides.

"California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'" *Mazza*, 666 F.3d at 593 (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802). As noted above, in the right of publicity context, a plaintiff's residency is often determinative on this point. *See Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 823 n.4 (9th Cir. 1974) (collecting cases and noting in the right of publicity context that "the state of plaintiff's residency is normally the state of the greatest injury"); *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988) ("[T]he nature of the injury – using Sinatra's name without compensation and potentially diluting the commercial value of the name – produces a *situs* of the injury in California. Sinatra conducts his business from California, he licenses his name in California, and the center of his business is in California"). Thus, California's interest in applying its law to out-of-state plaintiffs' claims is, at least, attenuated.

Moreover, while Lightbourne argues the "last event" necessary to make CBSI liable occurred in California (*see* Hearing Tr. at 13:5-10), the Court does not find this proposition is so straightforward on the facts of this case. The evidence before the Court is that the

photographs at issue were uploaded to the online photo stores by university-affiliated photographers nationwide, and that these photographs were stored on servers located throughout the western United States. (*See* Decl. of Jon Schoenherr, Doc. 170, ¶¶ 3, 4.) Thus, even assuming *arguendo* that the "last event" necessary for liability here is the photographs' display in the online photo stores, it is far from clear that this "wrong" took place in California, as opposed to throughout the nation. The states where the student-athletes reside, by contrast, undoubtedly have a strong interest in regulating this conduct and permitting their residents to redress any injury that occurred as a result. *See Page v. Something Weird Video*, 908 F. Supp. 714, 716 (C.D. Cal. 1995) ("[I]t is well-established that, where defendants publish or distribute the materials in various states, the state of plaintiff's domicile usually has the most significant relationship to the action.") (citing 5 WITKIN, SUMMARY OF CALIFORNIA LAW Torts § 339 (9th ed. 1988)).

In sum, the Court finds California's interest in applying its laws to residents of foreign states for injuries occurring in those foreign states is attenuated. It is true that California has an interest in regulating those entities, like CBSI, "who do business within its state boundaries . . . ." *Mazza*, 666 F.3d at 594. But foreign states' interests are more directly implicated by the facts of this case, and those interests would be most impaired if the respective foreign states' laws were not applied. Thus, a nationwide class may not be certified under California's right of publicity statute on the facts of this case.

### B.     Rule 23(b)(3)

Turning to the merits of Lightbourne's Motion, the Court concludes class certification is precluded under Federal Rule of Civil Procedure 23(b)(3) because (1) individual questions of fact and law predominate over common ones and (2) Lightbourne has not shown that a class action is the superior method of "fairly and efficiently adjudicating" this case. Fed. R. Civ. R. 23(b)(3).

11

### 1. **Predominance**

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 964 (citations and internal quotation marks omitted). In other words, "[t]he main concern of the predominance inquiry under Rule 23(b)(3) is the balance between individual and common issues." *Wang*, 737 F.3d at 545 (citation and internal quotation marks omitted). "Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Abdullah*, 731 F.3d at 964 (alterations in original).

This case presents a slew of individual questions and affirmative defenses that would need to be litigated for each image and student-athlete. Considered together, these issues and defenses clearly predominate over the common issues present in this action.

First is the issue of consent. CBSI presents evidence that Lightbourne expressly consented to the uses of his image here.[4] Lightbourne argues this is irrelevant because the NCAA Rules prohibit student athletes from consenting to the commercial exploitation of their image, and thus this "central, disputed issue" of consent "predominates and turns on common proof." (Reply at 12.) This argument is without merit. Lightbourne provides no

---

[4] CBSI attaches to its Opposition three "Student-Athlete Image Authorization" forms signed by Lightbourne during different seasons on UTEP's football team in which he "authorize[d] the University of Texas at El Paso (UTEP) or its agents to make copies of, use, sell, and distribute directly or through a third party, any photographic or other images taken in connection with my participation on a UTEP Intercollegiate athletic team." (Declaration of Yehudah L. Buchweitz, Doc. 168, Exs. 19-21.) CBSI also attaches to its Opposition the following portion of Lightbourne's deposition testimony:
    Q:    . . . The consent that you signed has no limitations on it with respect to UTEP's use of your photograph, image or likeness; correct?
    A:    Correct.
    Q:    There are . . . no words that limit its use; correct?
    A:    Correct.
(Lightbourne Depo, Buchweitz Dec. Ex. 2, 194:23-195:5.)

12

authority explaining how the NCAA Rules, even if they *did* prohibit Lightbourne from consenting to challenged activity here, would somehow *void* his express consent. Rather, to the extent Lightbourne violated the NCAA Rules by signing the consent form, this would appear to place him in breach of his contract with the NCAA – not to give him the unilateral ability to void his consent at some later time. Thus, the Court finds the issue of express consent will require, at the least, an institution-by-institution analysis to determine which athletes signed similar consent forms, which athletes did not, the legal import of the consent forms vis-à-vis the challenged sales arrangement, and so on. Thus, the Court does not find the issue of express consent "turns on common proof," as Lightbourne suggests. *See Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 444 (C.D. Cal. 2012) ("The Court would need to inquire into each retired player's manifestation of consent for Defendants to act on his behalf. These manifestations of consent will necessarily vary from individual to individual. Therefore, the existence of such agency relationships is not susceptible to common proof."); *cf. Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013) (noting in a TCPA suit that where "[i]t is likely that each individual received a different amount of information regarding how his cell phone number would be used and there is at least a non-trivial possibility that some class members expressed consent in a manner that was colored by these circumstances," "[t]his diversity suggests that the issue of consent should be evaluated individually, rather than on a classwide basis.").

The issue of implied consent looms large as well. Lightbourne stated at his deposition that he knew photographers were taking photos of him and that he did not object to their presence or ask anyone at UTEP to stop using his photos. (Lightbourne Depo. 23:5-13; 128:25-129:3.) Thus, there is at least a colorable issue as to his and class members' implied consent. *See Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011) *aff'd*, 489 F. App'x 155 (9th Cir. 2012) ("Consent to use a name or likeness need not be express or in writing, but it may be implied from the consenting party's

conduct and the circumstances of the case."); *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant."); *see generally Rivell v. Private Health Care Sys., Inc.*, 887 F. Supp. 2d 1277, 1291 (S.D. Ga. 2012) ("[B]ecause the issue of consent is particularized and fact-intensive it is not apt for singular determination in a case involving scores of plaintiffs."); *Brown v. NFL Players Ass'n*, No. EDCV 11-01953-RGK, 281 F.R.D. 437, 444 (C.D. Cal. 2012) ("[M]anifestations of consent will necessarily vary from individual to individual."). Thus, the Court finds the issue of implied consent also would require individualized determinations across the class, and rejects Lightbourne's NCAA Rules-based argument to the contrary for the same reasons as it did above.

Moreover, the need to apply fifty states' right of publicity laws to class members' claims also weighs against a finding of predominance. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) ("[V]ariations in state law may swamp any common issues and defeat predominance.") (citation omitted); *accord Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (holding that predominance was defeated, in part, by the number of differing state legal standards applicable to the controversy), *aff'd*, 521 U.S. 591, 624 (1997). It is not difficult to see why. Consider, for instance, that California's right of publicity statute excludes certain photographs of "definable groups" from its scope. Cal. Civ. Code § 3344(b)(2). Such groups include, but are not limited to, "a crowd at any sporting event . . . or a baseball team." Cal. Civ. Code § 3344(b)(2). As CBSI notes, at least some of the photos at issue in this case appear to fit this definition, including photos of football and crew teams posing. (Expert Report of Catherine Tucker, Buchweitz Decl., Ex. 43, ¶ 156.) Thus, a photo-by-photo inquiry would be required to determine whether, *inter alia*, whether the photograph at issue depicts a "definable group" before

14

imposing liability under Section 3344.[5] Other states' right of publicity statutes, with their own exclusions, would require similarly individualized inquiries. *See, e.g.*, Okla. Stat. Ann. tit. 12, § 1449 (providing that where a photograph depicts more than one person, "the person or persons complaining of the use shall be represented as individuals rather than solely as members of a definable group represented in the photograph," and defining a "definable group" in part as "[a] crowd at any sporting event . . . or a baseball team.").

Likewise, individualized inquiries would be required even to determine many class members' entitlement to *statutory* damages. As noted above, many states provide only for the recovery of actual damages. Even in states providing for statutory damages, it is not necessarily the case that a plaintiff may simply recover these upon proof that his or her likeness was displayed on a school's online photo store. For instance, while Section 3344 of the California Civil Code provides for $750 in statutory damages, courts parsing the statute have unanimously concluded that these statutory damages are recoverable only upon a showing of actual damages, whether they are commercial in nature or stem from a non-celebrity plaintiff's mental anguish. *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008) (observing "by enacting section 3344(a), the Legislature provided a practical remedy for a non-celebrity plaintiff whose damages are difficult to prove and who suffers primarily mental harm from the commercial misappropriation of his or her name"); *see also Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1242 (N.D. Cal. 2014) (noting that while Section 3344 "contains no express requirement that a plaintiff plead mental harm in order to claim the minimum statutory damages figure[,] [a] California Court of Appeal . . . has inferred such a requirement from section 3344 's

---

[5] Lightbourne suggests this objection is misplaced because the class definition avoids this exemption by limiting the class to student-athletes who are independently identifiable in the photographs." (Reply at 16 n.79.) Athletes could be independently identifiable while still falling within the scope of this statutory exclusion, however. In any case, because Lightbourne relies on a "self-identification" plan in which student-athletes would select offending photos of themselves, photo-by-photo inquiry would be required to determine whether all selected photos comported with Section 3344.

15

legislative history."); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 803 (N.D. Cal. 2011) ("Plaintiffs may not simply demand $750 in statutory damages in reliance on a bare allegation that their commercial endorsement has provable value, but rather must "prove actual damages like any other plaintiff whose name has commercial value."). California is not alone in requiring individual determinations even as to statutory damages; for instance, under Ohio's right of publicity statute, a court may award statutory damages ranging from $2,500 to $10,000 after "taking into account the willfulness of the violation, the harm to the persona in question, and the ability of the defendant to pay a civil damage award." Ohio Rev. Code § 2741.07(A)(1)(b). Thus, contrary to Lightbourne's contention, the fact that statutory damages are available does not lessen, let alone eliminate, the need for individualized inquiries as to a given class member's damages.

For these reasons, the Court finds prosecuting this action on a classwide basis would necessitate myriad individual inquiries of each athlete and disputed photograph. These inquiries predominate over any common questions and, with more than 1,1200,000 student-athlete likenesses at issue, would render this litigation totally unmanageable.[6] Accordingly, the Court finds the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is not met.

### 2. **Superiority**

The Court also concludes Rule 23(b)(3)'s superiority requirement is not met. For the reasons noted above, even determining CBSI's liability would require hundreds of mini-trials into the issues of consent and damages. *See Pryor v. Aerotek Scientific, LLC*,

---

[6] Because the Court finds the predominance requirement is not met in view of the above, it need not determine whether CBSI's additional defenses under the First Amendment, Copyright Act, and Communications Decency Act would further impede classwide resolution of this action. While the Court rejected these defenses at the motion to dismiss stage, it did so construing all allegations in the First Amended Complaint as true. To the extent the factual record differs from the facts set forth in the Complaint, these defenses would, of course, remain viable.

278 F.R.D. 516, 537 (C.D. Cal. 2011) (finding the superiority requirement not met because "the individual issues to be adjudicated will dominate, result[ing] in an unmanageable series of mini-trials, and consum[ing] an extraordinary amount of time."); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single . . . class is not manageable."); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the [numerous] states differ, the district judge would face an impossible task of instructing a jury on the relevant law."))

Moreover, the Court notes that Section 3344 provides for a mandatory award of attorneys' fees to a prevailing party. Cal. Civ. Code § 3344(a). Thus, to the extent Lightbourne can show that California law *does* apply to a given class member's claim, "there appears to be little reason why a class action is more efficient than individual actions." *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 582 (C.D. Cal. 2010) aff'd, 476 F. App'x 154 (9th Cir. 2012).

In sum, the Court concludes Lightbourne fails to satisfy the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3). The Motion is therefore DENIED on this basis.

### C. Rule 23(a) Requirements

Because the Court concludes class certification is inappropriate under Federal Rule of Civil Procedure 23(b)(3), it need proceed no further. Nevertheless, the Court briefly notes that for substantially the reasons already discussed, Lightbourne has not demonstrated that Rule 23(a)'s typicality and adequacy requirements are met either.[7]

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be]

---

[7] CBSI makes no argument that the numerosity and commonality requirements are not met. (*See generally* Opp.) The Court agrees with Lightbourne that these requirements are satisfied here.

17

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal citation and quotation marks omitted).  As noted above, there are substantial arguments as to whether Lightbourne expressly or impliedly consented to the sale of the photographs bearing his likeness.  Needless to say, a representative party is not typical of class members if he consented to the challenged activity.

      Moreover, Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  While Lightbourne might adequately represent those class members bringing a claim under the same state law as Lightbourne, the Court is not convinced he would adequately represent class members bringing claims under the law of the other 49 states.  *Cf. Alberghetti*, 263 F.R.D. at 581 (expressing doubts "that the named Plaintiffs would be willing to expend considerable time and resources responding to an argument that is irrelevant to their own cause of action").

      Accordingly, the Court concludes Rule 23(a)'s typicality and adequacy requirements are not satisfied, and DENIES the Motion for this reason as well.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Lightbourne's Motion for Class Certification.

DATED: July 30, 2015

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE