1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| YAHCHAAROAH LIGHTBOURNE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PRINTROOM INC., et al.,<br><br>Defendants. | CASE NO. SACV 13-876-JLS (RNBx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 190)** |

1

## I.  INTRODUCTION

Before the Court is a Motion for Summary Judgment filed by Defendant CBS Interactive, Inc.  (Mot., Doc. 190.)  Plaintiff Yahchaaroah Lightbourne opposed, and CBSI replied.  (Opp., Doc. 278; Reply, Doc. 256.)  Having read and considered the papers, heard oral argument, and taken the matter under submission, the Court GRANTS the Motion.

## II.  BACKGROUND

Plaintiff Yahchaaroah Lightbourne played college football at the University of Texas at El Paso from 2009 to 2011.  (Statement of Uncontroverted Facts, Doc. 191, ¶ 3.)[1] Lightbourne received need-based financial aid in 2009 and athletic scholarships in 2010 and 2011.  (Id. ¶ 4.)

UTEP had an online University Photo Store, which launched in mid-2012.  (Id. ¶ 1.) In 2006, UTEP granted IMG College, LLC an exclusive license to implement a "University Sports Website" and granted it exclusive license to use student-athletes' names, images, and likenesses.  (Id. ¶¶ 22-23.)  IMG in turn signed an agreement with CSTV Online, Inc. – a predecessor company to Defendant CBS Interactive, Inc. – granting CSTV the "exclusive right to serve as the UNIVERSITY athletics websites services partner . . . including the reproduction and sale of UNIVERSITY-related photographic images . . . ."  (Id. ¶ 24.)  UTEP explicitly approved the launch of its University Photo Store.  (Id. ¶¶ 25-26.)

UTEP's University Photo Store was accessible from a link on UTEP's athletic department website.  (Id. ¶ 2.)  Nine photographs of Lightbourne appeared on the Photo Store; they were taken by UTEP staff photographers Ivan Pierre-Aguirre and Michael P. Reese between September 5, 2010 and December 2, 2011.  (Id. ¶¶ 5-6.)  The Photo Store sold one photograph of Lightbourne –  a 5 inch by 7 inch photograph depicting his first tackle as a UTEP player.  (Id. ¶ 8.)  His girlfriend, Jessica Wilson, purchased it for $11.99. (Id.)

---

[1]  Unless otherwise noted, cited evidence is undisputed and not objected to or is objected to and any objection is overruled.

1
2

In 2009, 2010, and 2011, Lightbourne signed Student-Athlete Image Authorization forms provided to him by UTEP.  (Id. ¶ 14.)  Each form reads in its entirety:

3
4
5

> I, [Yahchaaroah Lightbourne], hereby authorize the University of Texas at El Paso (UTEP) or its agents to make[] copies of, use, sell and distribute directly or through a third party, any photographic or other images taken in connection with my participation on a UTEP intercollegiate athletic team.

6
7
8
9
10
11
12

(Decl. of Yehudah Buchweitz, Doc. 180, Exs. 15-17.)  Lightbourne signed and dated each form.  (Id.)  Lightbourne was an adult when he signed each form.  (Id. ¶ 22.)  No one at UTEP told Lightbourne that he could not play college football if he did not sign the Student-Athlete Image Authorization forms.  (Id. ¶ 18.)  UTEP's athletic director testified that signing the Student-Athlete Image Authorization forms was not mandatory and that Lightbourne would have been allowed to play at UTEP even if he had not signed the forms.  (Id. ¶ 19.)

13
14
15
16
17
18
19

CBSI now moves for summary judgment on Lightbourne's right of publicity claims on the grounds that (1) there is no right of publicity claim under Wyoming law, which applies to Lightbourne's claim and (2) even if Wyoming law does not apply, Lightbourne expressly and impliedly consented to the challenged uses of his likeness.  (Mot. at 10-15.)  CBSI further seeks summary judgment on Lightbourne's civil conspiracy claim as derivative of the right of publicity claims.  (Id. at 15-16.)  Lightbourne timely opposed CBSI's Motion.

20
21

## III.    LEGAL STANDARD

22
23
24
25
26
27
28

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A factual issue is "genuine" when there is sufficient evidence such that a

1   reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is
2   "material" when its resolution might affect the outcome of the suit under the governing
3   law. *Anderson*, 477 U.S. at 248. The moving party bears the initial burden of
4   demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S.
    317, 323 (1986). "If a party fails to properly support an assertion of fact or fails to
5   properly address another party's assertion of fact . . . , the court may . . . consider the fact
6   undisputed." Fed. R. Civ. P. 56(e)(2).
7        Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a
8   party who fails to make a showing sufficient to establish the existence of an element
9   essential to that party's case, and on which that party will bear the burden of proof at trial."
10  *Celotex Corp.*, 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient
11  showing to establish the elements of its claims, the Court must grant the motion. *See In re*
12  *Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must
13  come forth with evidence from which a jury could reasonably render a verdict in the non-
14  moving party's favor").

15  **IV.   DISCUSSION**
16

17      **A.      Right of Publicity Claims**
18

19       As noted above, CBSI seeks summary judgment on Lightbourne's right of publicity
20  claims on the grounds that (1) Wyoming law properly applies to Lightbourne's claim, and
21  Wyoming does not recognize a right of publicity tort and (2) Lightbourne expressly and
22  impliedly consented to the challenged uses of his image. (Mem. at 10-15.)
23       Lightbourne argues California law properly governs his claim. For the reasons
24  discussed in the Court's Order denying class certification, the Court doubts that is so. But
25  even assuming *arguendo* that California law *does* apply, Lightbourne's right of publicity
26  claims still fail. This is because an element of California's right of publicity statute and
27  common law right of publicity tort is that the use of the plaintiff's image or likeness occur
28  without the plaintiff's consent. *See* Cal. Civ. Code § 3344(a) (statutory right of publicity

claim); *White v. Samsung Electronics Am., Inc.*, 971 F.2d 1395, 1397 (9th Cir. 1992) (defining elements of California's common law right of publicity claim) (quoting *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (1983)).  It is undisputed that in 2009, 2010, and 2011, Lightbourne signed Student-Athlete Image Authorization forms in which he expressly authorized UTEP "or its agents to make[] copies of, use, sell and distribute directly or through a third party, any photographic or other images . . . taken in connection with [his] participation on a UTEP intercollegiate athletic team."  (SUF ¶ 14.) It is undisputed that this is precisely what occurred here.  (SUF ¶¶ 14-15.)  Thus, Lightbourne's right of publicity claims fail because he expressly consented to the challenged uses of his image.

In his opposition, Lightbourne nevertheless argues there are genuine issues of material fact surrounding the issue of express consent and the import of the Student-Athlete Image Authorization forms.  (Opp. at 15.)  Lightbourne argues that at this stage in the case, "the authorization [he] signed for UTEP must be read in the context of the NCAA rules that prohibit the use of a student-athlete's [name, image, or likeness] for commercial purposes."  (Id. at 15-16.)  Lightbourne points to Section 12 of the NCAA Bylaws, which read:

> **12.5.2.2   Use of a Student-Athlete's Name or Picture Without Knowledge or Permission.**  If a student-athlete's name or picture appears on commercial items (e.g., T-shirts, sweatshirts, serving trays, playing cards, posters) or is used to promote a commercial product sold by an individual or agency without the student-athlete's knowledge or permission, the student-athlete (or the institution acting on behalf of the student-athlete) is required to take steps to stop such an activity in order to retain his or her eligibility for intercollegiate athletics.  Such steps are not required in cases in which a student-athlete's photograph is sold by an individual or agency (e.g., private photographer, news agency) for private use. *(Revised: 1/11/97, 5/12/05)*

(Aragon Decl., Doc. 232-1, Ex. 1.)  Lightbourne argues that Section 12.5.2.2 "does not permit student-athletes to grant consent to use their [names, images, or likenesses] for commercial purposes" and "by its own terms, requires Plaintiff or UTEP to attempt to stop CBSI's conduct or risk losing eligibility and, by extension, the athlete's scholarship."

(Opp. at 22-23.)

Section 12.5.2.2 is irrelevant for numerous reasons.  First, it facially does not apply to the situation at bar, but rather applies only where a student-athlete's image is used "without the student-athlete's knowledge or permission . . . ."  (Id.)  Because Lightbourne expressly consented to the sale of his likeness by UTEP and its agents, Section 12.5.2.2 by its plain meaning does not apply here.

More fundamentally, Lightbourne does not even attempt to explain how Section 12.5.2.2 – even if it *did* apply to the situation at bar – would somehow vitiate his express legal consent.  Rather, if Section 12.5.2.2 prohibited Lightbourne from assenting to the sale of his likeness, his signing of the Student-Athlete Image Authorization forms would appear only to place him in breach of his alleged obligation to the NCAA.  *See Vick v. Patterson*, 158 Cal. App. 2d 414, 418 (1958) (where fire department prohibited firefighters from accepting outside employment, "[t]here is little doubt that within the fire department such a rule is effective, and may be enforced by disciplinary proceedings against the employee . . . .  It is quite another matter to argue that the rule invalidates contracts between the employee and a third party."); *cf. id.* ("Although the City and County of San Francisco requires that its employees be residents of San Francisco, it would hardly be contended that an employee's lease of a residence outside the city is void.").  Thus, Section 12.5.2.2 is irrelevant to the instant Motion.[2]

Lightbourne alternatively urges that there is a genuine issue of material fact as to his express consent because of his own deposition testimony on the meaning of the Student-Athlete Image Authorization form.  (Opp. at 16-18.)  Indeed, the parties vigorously debate the meaning to ascribe to Lightbourne's deposition testimony on this issue; CBSI argues Lightbourne "knew what he was signing" and "agreed that the consents he signed had no

---

[2]  For this reason, the Court declines Lightbourne's invitation to abstain from deciding this Motion until he can conduct additional discovery into the NCAA Bylaws.  (Opp. at 2; *see also* Mot. Pursuant to Rule 56(d) for Additional Discovery, Doc. 226.)  *See Qualls By & Through Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (noting that a request for additional discovery before summary judgment is properly denied where the requesting party does not demonstrate that the additional discovery would preclude summary judgment).

limitations with respect to UTEP's use of his photo, image, or likeness," while Lightbourne calls CBSI's deposition questioning "misleading" and urges that the best reading of his deposition testimony is that he understood the authorization "did not allow CBSI to use his [name, image, or likeness] for a commercial purpose." (Mot. at 12; Opp. at 17.) This debate is understandable as Lightbourne's testimony is, to say the least, confused.[3]

---

[3] For instance, after being given the Student-Athlete Image Authorization forms, the following exchange took place:

Q: And you agreed that [UTEP] could sell [the photographs] either on their own or through an agent if they needed an agent to help them?
A: That's what the paper says.
Q: And you signed it?
A: Yes, sir.
. . .
Q: . . . If hypothetically UTEP hired IMG to help its multimedia solutions, including its websites, and IMG hired CBS to run the UTEP Athletics website, and then CBS hired Printroom to help it do a photo store and a portion of the money went back to UTEP, would you have a problem with that kind of a sale?
. . .
A: Would I have a problem with it? If it wasn't linked to UTEP's website, yes.
Q: But if it was linked to UTEP's website, then it would be fine; right?
A: Yes.

(Lightbourne Depo. 32:18-23; 33:25-34:13.) Moreover, later in his deposition, Lightbourne testified as follows:

Q: . . . The consent that you signed has no limitations on it with respect to UTEP's use of your photograph, image, or likeness; correct?
A: Correct.
Q: There are no – there are no words that limit its use; correct?
A: Correct.

(Lightbourne Depo. 194:23-195:9.)
However, at other times during his deposition, Lightbourne appears to contradict this testimony. For instance, when later questioned about the Complaint's allegation that he did not grant consent to the use of his image on the University Photo Store, the following exchange occurred:

Q: . . . [Y]our testimony – so your testimony sitting here today is that despite the signatures you gave and authorizations you gave in [the Student-Athlete Image Authorization forms], [the Complaint's allegation regarding lack of consent] is true and accurate?
A. Yes.

(footnote continued)

7

The Court concludes, however, that this factual dispute, while perhaps genuine, is not material, because Lightbourne's understanding of the Student-Athlete Image Authorization forms' legal import is irrelevant.  *See Anderson*, 477 U.S. at 248 (holding that an issue is "material" when its resolution might affect the outcome of the suit under the governing law).  Under California law – which, again, Lightbourne argues must apply here – the goal of contract interpretation is to "'give effect[] to the mutual intention of the parties as it existed' at the time the contract was executed."  *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008) (quoting Cal. Civ. Code § 1636).

---

Q.    So you're swearing today under oath that you did not grant UTEP or any company that manages the online display and/or sale of photos the right to sell your photographs?

A.    No.

Q.    You are not swearing that today?

A.    Oh. I am swearing that I did – like I did not give UTEP the – what's the word I'm looking for – the authority, I guess, to sell my photos, I guess, you can say.  All I know is when I signed that paper, like I'm saying, when I signed the paper, it was you cannot sell anything of UTEP's signature, likeness, anything.  You can't sell it to make a profit.  That's what that paper meant.

(Lightbourne Depo. 122:24-123:20.)  This line of testimony, however, concluded with Lightbourne appearing to contradict his *previous* contradictory answer:

Q.    Now that you've seen that you have signed [the Student-Athlete Image Authorization forms] which authorized UTEP to sell these photographs, whether you remember it exactly like that now or not, sitting here today, isn't it true that [the Complaint's allegation regarding lack of consent] is false?

. . .

A.    I won't answer the question. I mean, for me, I won't answer the question.

Q.    You have to, I'm sorry.

. . .

A:    Can I plead the Fifth?

. . .

A.    Like I said before, when I signed the paper, it was – you can't use your – you can't sell your likeness.  That's exactly all I remember from signing the paper.

. . .

Q.    I'm asking you a different question, which is . . . knowing today . . . that you did sign these and seeing the words in front of you today . . . isn't it true that [the Complaint's allegation regarding lack of consent] is false?

. . .

A.    Yes.

(Lightbourne Depo 125:16-127:5.)

8

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."  Cal. Civ. Code § 1639; *see also MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) (holding that where contractual terms are unambiguous, California law requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written provisions of the contract") (citing Cal. Civ. Code § 1639).  Thus, "the objective intent of the contracting parties [is ordinarily] a legal question determined solely by reference to the contract's terms."  *Wolf*, 162 Cal. App. 4th at 1126.

Here, the Student-Athlete Image Authorization forms could not be more unambiguous.  In them, Lightbourne clearly and unequivocally authorizes UTEP "or its agents to make[] copies of, use, sell and distribute directly or through a third party, any photograph or other images taken in connection with my participation on a UTEP intercollegiate athletic team."  (Decl. of Yehudah Buchweitz, Doc. 180, Exs. 15-17.)  Faced with this clear and unambiguous contractual language, its interpretation is a question of law, and Lightbourne's internal understanding – to the extent it differs – is irrelevant.  *See Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (2006) (holding that a party's "'undisclosed intent or understanding is irrelevant to contract interpretation.'") (quoting *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003)).  It is true that California law permits the use of extrinsic evidence "'to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonably susceptible.'"  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004) (quoting *BMW of North America, Inc. v. New Motor Vehicle Bd.*, 162 Cal. App. 3d 980, 990, n.4 (1984)).  The Student-Athlete Image Authorization forms, however, are patently unsusceptible to the meaning Lightbourne urges.  Thus, this extrinsic evidence is of no moment here, and the parties' dispute over it has no bearing on the Court's analysis.

In sum, the Court finds there is no genuine dispute of material fact as to whether Lightbourne expressly consented to the sale of his image on UTEP's University Photo Store.  As a result, a reasonable factfinder could not render a verdict in Lightbourne's favor on his right of publicity claims.  The Court therefore GRANTS CBSI's Motion as to

1 these claims.

2

3    **B.    Civil Conspiracy Claim**

4

5    CBSI argues Lightbourne's remaining claim for civil conspiracy fails because it is

6 derivative of his right of publicity claims.  (Mot. at 15-16.)  Lightbourne does not contest

7 that his civil conspiracy claim rises and falls with his right of publicity claims.  (Opp. at

8 24.)  Thus, because the Court grants summary judgment in CBSI's favor on Lightbourne's

9 right of publicity claims, the Court will also GRANT summary judgment in its favor on

10 Lightbourne's civil conspiracy claim.

11    **C.    Attorneys' Fees**

12

13    CBSI finally seeks an award of attorneys' fees and costs.  (Mot. at 16.)  A

14 prevailing party is entitled to recover both under California's right of publicity statute.  *See*

15 Cal. Civ. Code § 3344 ("The prevailing party in any action under this section shall also be

16 entitled to attorney's fees and costs.").  This is true even where the law of another state or

17 country properly governs the plaintiff's claim.  *See Love v. Associated Newspapers, Ltd.*,

18 611 F.3d 601, 614 (9th Cir. 2010) (awarding attorneys' fees under Section 3344 even

19 though California law did not apply to the claim because plaintiff "brought an action *under*

20 California's right of publicity statute") (citing *Cairns v. Franklin Mint. Co.*, 292 F.3d

21 1139, 1149, 1156 (9th Cir. 2002)) (emphasis in original)).  Thus, CBSI appears to be

22 entitled to attorneys' fees.  Nevertheless, neither party placed any real weight on this issue

23 in their briefing, and the Court will reserve judgment on CBSI's entitlement to attorneys'

24 fees, as well as the amount of any attorneys' fees to be awarded, until the matter comes

25

26

27

28

before the Court on a timely, regularly noticed motion.[4]

## V.      CONCLUSION

For the foregoing reasons, the Court GRANTS CBSI's Motion for Summary Judgment in its entirety, and DENIES AS MOOT CBSI's Special Motion to Strike Plaintiff's First Amended Complaint (Doc. 195) and all pending motions filed by Plaintiff (Docs. 228, 287, 293, and 294).

DATED:  August 14, 2015          _____

                                 JOSEPHINE L. STATON
                                 UNITED STATES DISTRICT JUDGE

---

[4] Of course, the parties should make every effort to resolve the issue in accordance with their Local Rule 7-3 obligations before bringing the matter before the Court for resolution.  *See* C.D. Cal. R. 7-3.

11